STATE OF MINNESOTA *vs.* CHARLES A. HAWKS *et al.*

Argued Dec. 21, 1893. Affirmed Jan. 5, 1894.

No. 8615.

**Grand Jurors for Ramsey County District Court, how selected.**

Sp. Laws 1876, ch. 214, providing that the grand jury lists for Ramsey county shall be selected "from the qualified electors of the several wards in the city of St. Paul and towns of said county." does not require that the names selected shall be apportioned among the different wards and towns. All that the law requires is that those making the list, having in mind the whole body of the county, shall make the selection with special reference to fitness, regardless of ward or town lines.

**Indorsing names of witnesses on the indictment.**

The witnesses whose names are required to be indorsed on an indictment, or inserted at the foot thereof, are only those who were examined and gave material evidence upon the particular charge alleged in the indictment, at the time when such charge was being investigated by the grand jury.

**Names of witnesses that should not be indorsed.**

It is not required to indorse or enter the names of witnesses who, while other charges were being investigated, may have given evidence material upon the charge alleged in the indictment, unless the grand jury found the indictment, in whole or in part, on such evidence; and the fact that the names of such witnesses are not indorsed or entered on the indictment is conclusive that the grand jury did not take such evidence into account in finding "a true bill."

**What disclosure by a witness before a grand jury will render his indictment invalid.**

The fact that a person may, in the investigation of some other charge by the grand jury, have been required to give evidence which would

v.56m.—9

have been material on the particular charge for which he is indicted, is no cause for setting aside the indictment on the ground that he was required to testify against himself, unless it appears from the indorsement or entry of his name on the indictment as a witness that the grand jury found the bill, in whole or in part, on his evidence.

Charles A. Hawks and William B. Evans were indicted October 19, 1893, by the Grand Jury of Ramsey County for the crime of grand larceny in the first degree. They were officers of the Seven Corners Bank of St. Paul and were accused of feloniously converting and embezzling $60,000 of its money. When arraigned, the defendant, Evans, moved the Court, *William Louis Kelly, J.*, to set aside the indictment on the ground that he was compelled to appear as a witness before the grand jury which found the indictment and to testify as a witness touching the charge and matters, for which he was indicted. Both defendants moved to set the indictment aside on the ground that the names of some of the witnesses examined before the grand jury were not indorsed upon the indictment or inserted at the foot thereof, and on the ground that no grand juror on the panel was drawn from any town in the county, all being from the City of St. Paul.

In support of this motion the accused introduced affidavits, and the State introduced the minutes of the Grand Jury, and oral evidence was taken before the Court. The motion was denied. A case was made containing all the proofs, affidavits and oral testimony, and it was settled, signed and filed. On the application of the defendants, the Judge reported the case so far as was necessary to present the questions of law arising thereon and certified the report to this Court, and stayed all further proceedings until the decision of this Court thereon could be made. (1878 G. S. ch. 117, § 11.) In the record is the decision of the trial Court, in which it is said:

"Sp. Laws 1876, ch. 214, § 1, requires the selection of grand jurors to be made 'from the qualified electors of the several wards in the City of St. Paul and towns of said county.' Section 2 provides that in making said list said officials shall select such persons, of the business men and other electors, as they believe are best qualified by education, moral character and integrity to discharge the duties of jurors. This statute merely says what the common law said. The board, at the peril of invalidating every jury panel, is not required to know

just where any or every juror resided when chosen. The law requires the board, having in mind the whole body of the county, to make the best selection it can, with special regard to fitness; not to residence, ward or town lines. *State* v. *Beckey,* 79 Ia. 368; *State* v. *Brandt,* 41 Ia. 593.

Were witnesses other than those whose names are endorsed on this indictment examined by the grand jury while considering the accusation therein embraced? Was defendant, W. B. Evans, compelled to give testimony against himself? The minutes of the grand jury kept and filed according to law import verity. 1878 G. S. ch. 107, § 25. They ought not to be impeached, except upon clear proof of either fraud or mistake. And I find from the evidence that they have not been impeached in any particular.

It is manifest, from an inspection of these minutes, that the grand jury were not considering on October 12, 16, and 17, the charge embraced in this indictment, because they found no bill. Indeed, I feel warranted in finding from the evidence that they then considered only the alleged larceny of $3,000, said to have been committed May 18, 1893, and for which defendant Hawks had been held to answer in this Court. This indictment charges a larceny alleged to have been committed on January 1, 1893.

The offer of defendants to show that certain witnesses, among them defendant Evans, who testified before the grand jury concerning the alleged larceny of $3,000, of which defendant Hawks was accused, gave testimony at the same time touching the subject matter of this indictment, cannot be permitted for the obvious reason that whatever the grand jury then heard was never made the foundation for an indictment against any person.

To hold otherwise would necessarily put the Court in the position of weighing all the testimony heard by the grand jury during any of its sessions and determining what was material. It would be compelled to go further and to pry into the conscience of each juror and ascertain what influenced his vote, and that is equivalent to demanding how he voted. That can not be done. When defendant Evans testified against defendant Hawks he did not testify against himself. If he was then asked questions, the answers to which might criminate himself, he should have refused to answer. If he so testified volun-

tarily he cannot urge that now as a reason for setting aside an indictment found on the testimony of other witnesses."

*Davis, Kellogg & Severance,* for the accused.

It was said by the Court below, that if Evans was called before the grand jury and gave testimony while the grand jury were taking evidence in the case against Charles A. Hawks, he did not testify against himself although he was interrogated while before them and gave evidence about the subject matter of the charge on which he was indicted. This position is not supported by authority or reason. *Counselman* v. *Hitchcock,* 142 U. S. 547; *Boyd* v. *United States,* 116 U. S. 616; *State* v. *Nowell,* 58 N. H. 314; *Commonwealth* v. *Gibbs,* (4 Dallas 253, 3 Yates 429;) *State* v. *Quarles,* 13 Ark. 307; *La Fontaine* v. *Southern Underwriters' Assoc.,* 83 N. C. 132; *Temple* v. *Commonwealth,* 75 Va. 892.

Many witnesses were called before the grand jury and gave testimony on the subject matter on which these defendants were indicted. But their names were not indorsed upon the indictment or inserted at the foot thereof. This is fatal to the indictment. 1878 G. S. ch. 107, § 59; ch. 110, § 1. *McKinney* v. *People,* 2 Gilman, 540; *Andrews* v. *People,* 7 Am. Crim. R. 250; *People* v. *Freeland,* 6 Cal. 96.

A grand juror may be called as a witness to prove who were the witnesses sworn upon a particular charge, and to prove that the defendant was compelled to appear before the grand jury and testify; and the witnesses who were sworn before said grand jury may be called to testify to the same thing. 1878 G. S. ch. 107, §§ 40, 41.

The statute does not in terms prevent the grand jury from disclosing the names of the witnesses upon any particular charge after the grand jury has adjourned and the defendants have been arrested and have given bail. *Ex parte Schmidt,* 71 Cal. 212; *People* v. *Northey,* 77 Cal. 618; *Commonwealth* v. *Green,* 126 Pa. St. 531; *Commonwealth* v. *Mead,* 12 Gray, 167; *Commonwealth* v. *Hill,* 11 Cush. 137; *United States* v. *Farrington,* 2 Crim. Law Mag. 525; *Burnham* v. *Hatfield,* 5 Blackf. 21; *Way* v. *Butterworth,* 106 Mass. 75; *Jones* v. *Turpin,* 6 Heisk. 181; *State* v. *Grady,* 12 Mo. App. 361;

*State* v. *Wood,* 53 N. H. 484; *Sparrenberger* v. *State,* 53 Ala. 481; *Little* v. *Commonwealth,* 25 Gratt. 921; *People* v. *Briggs,* 60 How. Pr. 17; *People* v. *Shattuck,* 12 Abb. New Cas. 33; *State* v. *Van Buskirk,* 59 Ind. 384.

The grand jury list was exclusively made up from persons living in the City of St. Paul; hence, the jurors were not drawn according to law and the indictment should be set aside on this ground. *State* v. *Dick,* 47 Minn. 375; *State* v. *Schumm,* 47 Minn. 373; *State* v. *Beckey,* 79 Ia. 368; *United States* v. *Dixon,* 44 Fed. R. 401; *State* v. *Wilcox,* 104 N. C. 847; *Thorp* v. *People,* 3 Utah, 441; *Wells* v. *State,* 94 Ala. 1; *Lott* v. *State,* 8 Tex. App. 627; *State* v. *Bowman,* 73 Ia. 110; *Barney* v. *State,* 20 Miss. 68; *Miller* v. *State,* 33 Miss. 356; *Leathers* v. *State,* 26 Miss. 73.

*H. W. Childs,* Attorney General, *George B. Edgerton,* his assistant, and *Pierce Butler,* County Attorney, for the State.

The defendant Evans was not compelled to be and appear before the grand jury to testify as a witness touching the charge and matters urged in the indictment against him. Nor did the Court err in refusing to receive testimony tending to prove that the defendant Evans was a witness against himself. It has been held by respectable authority, although authorities are not by any means wanting in support of the opposite view, that neither the motion to set aside, nor the motion to quash will lie when the objection does not appear or arise upon the face of the indictment, or perhaps the records of the Court. *United States* v. *Brown,* 1 Saw. 531; *Mackin* v. *People,* 115 Ill. 312; *State* v. *Dayton,* 23 N. J. Law, 49; *Wickwire* v. *State,* 19 Conn. 477; *Broward* v. *State,* 9 Fla. 422; *Bell* v. *State,* 42 Ind. 335; *Bellair* v. *State,* 6 Blackf. 104; *State* v. *Herndon,* 5 Blackf. 75; *State* v. *Freeman,* 6 Blatchf. 248.

The case of *State* v. *Froiseth,* 16 Minn. 296, is of no service in aid of the question at bar, for the reason that it was there expressly stipulated that the defendant was required to attend and be examined as a witness touching the charge and matters set forth in the indictment.

If the defendant Evans did testify touching the matters charged in the indictment against him, that fact alone would not vitiate

the indictment. To bring his case within the prohibition, it must appear that he was compelled to testify against himself touching the charges pending against him. *United States* v. *Brown,* 1 Saw. 531; *United States* v. *Reed,* 2 Blatchf. 435; *Mackin* v. *People,* 115 Ill. 312.

In the case of *Pinney's Will,* 27 Minn. 280, this Court said: "Evidence of what testator testified to before the grand jury was properly excluded. The only cases in which the testimony of a witness may be disclosed, are those specified in 1878 G. S. ch. 107, § 41." Assuming that it is proper to receive evidence as to matters transpiring in the grand jury room, which is unquestionably so, for certain purposes, as in prosecutions for perjury or the impeachment of witnesses, the remedy invoked by the defendants in the case at bar, is not an absolute right, or *ex debito justiciae,* but is one which is addressed to the discretion of the Court. *State* v. *Dayton,* 23 N. J. Law 49; *People* v. *Eckford,* 7 Cow. 535; *Burr* v. *State,* 42 Ind. 337; *State* v. *Hageman,* 13 N. J. Law 314.

A statute requiring the endorsement of the names of witnesses upon the indictment is merely directory. *State* v. *Hollingsworth,* 100 N. C. 535; *State* v. *Sheppard,* 97 N. C. 401; *State* v. *Enoch,* 26 W. Va. 253; *State* v. *Wilkinson,* 76 Me. 317; *Commonwealth* v. *Edwards,* 4 Gray 1.

The same reason urged by the defendants as to the endorsement of the names of the witnesses applies with equal force in cases where the name of the prosecutor is required to be endorsed upon the indictment. The weight of authority, however, supports the view that the requirement is merely directory. *State* v. *Hughes,* 1 Ala. 655; *State* v. *Willis,* 78 Me. 70; *Dever's Case,* 10 Leigh. 685; *United States* v. *Mundel,* 6 Call 245.

The only remaining question goes to the validity of the drawing of the grand jury. The views of the trial Court upon this branch of the case are so full and to the point that we can do no better than to adopt them *in extenso.*

MITCHELL, J. The grand jury of Ramsey county, on October 19th found, and on October 20, 1893, presented in court, an indictment against the defendants jointly for grand larceny in the first degree,

committed January 1, 1893, by embezzling $60,000 of the money and personal property of the Seven Corners Bank of St. Paul, while in control and custody of the property as employes and officers of the bank. The names of three witnesses examined before the grand jury were indorsed on the indictment. Each of the defendants made a motion to quash. These motions were made upon the grounds—*First*, that the grand jury list was not selected, as pro-vided by law, from the qualified electors of the several wards of the city of St. Paul and towns of Ramsey county; *second*, that the names of certain witnesses examined before the grand jury were not indorsed on the indictment or inserted at the foot thereof; and, *third*, (as to Evans,) that he was compelled to testify as a witness before the grand jury touching the charge and matters urged against him in the indictment.

The first ground may be very briefly disposed of. All that was presented in support of it was the affidavit of an ex-sheriff, whose term of office expired the year before the grand jury list in ques-tion was selected, to the effect that the usual mode of making up grand jury lists during his term of office was to select the names entirely from the city of St. Paul, and usually from the city direct-ory, and that he had examined the names of this particular list, and found that they were all residents of the city, and none of them of the towns outside of the city. The affiant did not claim to have any personal knowledge as to how the list from which this grand jury was drawn had been made up. The fact that they were all residents of the city proved nothing. Sp. Laws 1876, ch. 214, pro-viding that the lists shall be selected from the several wards of the city and towns of the county, is nothing more than the common-law rule that they must be selected from the body of the county. The board which selects the names is not required to know or ascer-tain in what particular part of the county each juror resides, or to apportion the names selected among the different wards or towns. All that the law requires is that the board, having in mind the whole body of the county, shall make the best selection it can, with special regard to fitness, regardless of ward or town lines.

2. The second and third grounds of the motions may be considered together. Defendant Evans, in support of his motion, presented his own affidavit to the effect that while the grand jury which found

the indictment "was investigating said case, and hearing testimony upon the charge named in said indictment," he was subpoenaed, and compelled to testify before it as a witness "touching the charge and matters alleged in the indictment against him." Both defendants also presented the affidavits of several persons, whose names were not indorsed on the indictment, to the effect that while the grand jury "was investigating said case, and hearing testimony upon the charge named in said indictment," they were subpoenaed, and testified before it as witnesses "touching the charge and matters alleged in the indictment," or "with reference to the matters set forth in the indictment." In opposition to the motions, the state presented the affidavit of the clerk of the grand jury that he kept and preserved the minutes of the proceedings of said jury, which minutes were presented and filed in court; that he was present during all the time the jury was in session, and heard the testimony of each and every witness who testified before it; that said minutes were a true and correct record of all the cases considered by said jury; that he entered and recorded in said minutes the name of each and every witness who testified before the grand jury; and that no person testified in any case before said jury whose name does not appear in the minutes, under the title of said case, as a witness therein.

The state also presented the minutes of the proceedings of the grand jury referred to in the affidavit of the clerk, and kept as required by 1878 G. S. ch. 107, § 25. These minutes purport to be a full record of the proceedings of the grand jury during its entire session, showing each day's transactions in regular order, giving the title of each case investigated by the jury, the name of the defendant or person against whom the charge was made, the offense of which he was charged, the names of the witnesses examined, and the final disposition of the case, either by finding "A true bill" or "No bill."

It appears from these minutes that on October 12th the grand jury entered upon the consideration of the case of State of Minnesota vs. C. A. Hawks, charged with "grand larceny in the first degree." It is reasonably probable, if not entirely apparent, from the record, that the charge here referred to was that of the larceny of $3,000 of the property of the Seven Corners Bank, alleged to have

been committed May 18, 1893, and for which Hawks had, on examination, been held to answer in the district court. The names of a large number of persons are given as having been examined as witnesses on this charge. These include the name of the defendant Evans, and also of all the persons named in defendants' motion papers except one. It appears from the minutes that these persons were examined on October 12th, 16th, and 17th, and that on the last-named date the grand jury, on this charge, voted to find "No bill."

It also appears that on October 13th the grand jury took up the investigation of a charge of "grand larceny in the second degree" against the same defendant, Hawks, and examined four witnesses, including three of those examined concerning the first charge; that on this accusation, and upon the same day, the grand jury voted "No bill." It then appears from the minutes that on October 19th the grand jury took up the accusation against Evans and Hawks of grand larceny in the first degree, upon which this indictment was found, and examined the three witnesses whose names are indorsed thereon, and on the same day found "A true bill" against both defendants. It further appeared from the minutes that on October 20th the grand jury proceeded to investigate a charge of forgery in the second degree against Hawks, and examined two witnesses, both of whom had been examined on one or more of the prior investigations referred to; and that upon this charge the grand jury voted "No bill."

Upon a subsequent hearing, the defendants, in support of their motions, introduced as witnesses several members of the grand jury, and also several persons whom they claimed had been examined as witnesses before it, but whose names were not indorsed on the indictment. The court ruled that he would permit grand jurors to be examined to the extent of showing that, when they were investigating the particular charge against the defendants upon which the indictment was found, they examined other witnesses than those shown in the record, but that he would not allow defendants to go back and show what was done on other and different charges; or, as stated by the trial judge: "He would permit a grand juror to be examined to this extent, and no further: A grand juror may be asked what particular charge, if any, against either of these de-

fendants, was under investigation on any particular day, and to give the names of the witnesses who then testified before the grand jury concerning said charge at that time." As we construe this ruling, it was that the inquiry would be confined to what witnesses were examined before the grand jury upon the particular charge upon which the indictment was found, and at the particular time when that particular charge was being investigated. The correctness of this ruling is the principal question presented by the record.

The defendants then offered to prove, among other things, that "on October 12th, 16th, and 17th the grand jury were considering and investigating generally the manner in which the business of the Seven Corners Bank had been transacted by the defendant Evans as cashier and defendant Hawks as assistant cashier;" that on these dates Evans was subpoenaed, and compelled to testify before the grand jury "relative to the charge in this indictment, and concerning the subject-matter thereof;" that on these dates the grand jury were considering, among other matters relating to the dealings of these defendants with said bank, the specific charge set up in the indictment, and that the several persons named in the motion papers "gave testimony relative to the subject-matter on which these defendants were indicted," or "concerning the specific matter set up in the indictment," or "upon the subject-matter, and relative to the charges, set forth in the indictment against these defendants." These offers were repeated in various forms, but were all excluded by the court because not confined within the limits fixed by the previous ruling of the court.

It is fairly inferable from the record that all of the matters under investigation by the grand jury on the various named dates had reference to the "wrecking" of the Seven Corners Bank by its various officers and employes, and particularly by the two defendants. It is evident that this general subject might include, not only the commission of crimes by different persons, but also the commission of different crimes by the same person. It may also be reasonably presumed that in such a case the investigation of one charge against one person might elicit evidence that would tend to prove the commission of the same crime by another person, or the commission of another crime by the same person, or the commission of another crime by another person.

And while the "offers" of the defendant were skillfully worded, yet it is perfectly apparent that what they proposed to do was to go into a full examination of all the proceedings of the grand jury, and of all the evidence given before it, upon all its investigations in relation to the general subject of the business management of the Seven Corners Bank. Their contention leads logically and necessarily, as their counsel frankly admitted on the argument, to the following result. *First*, that if, in investigating a charge of a particular crime against A., B. should be examined as a witness, and give testimony which would tend to show that he had committed the same or some other crime, the grand jury could never find an indictment against B. for such crime, however clearly proven by other and independent evidence when the jury came to the investigation of such charge, but that the matter would have to be relegated to a subsequent grand jury; *second*, that, in finding an indictment against a person, the grand jury must indorse thereon the names, not only of those persons who were examined as witnesses touching that particular charge when it was under investigation, but also of all other persons who, while being examined on other matters, may have given evidence that might have been material upon that particular charge, although the grand jury may not have taken it into account in finding the indictment.

And this last proposition necessarily leads to a *third*, equally novel and startling, viz.: That, upon a motion to set aside an indictment on the ground that the names of witnesses are not indorsed, a defendant may go into a general fishing expedition through the entire proceedings of a grand jury, and make them public, for the purpose of ascertaining what witnesses have at any time during the session, in the investigation of any case, given testimony material to the charge in the indictment. This would involve not only the reproduction of the evidence on the motion, but also the determination of the court as to its materiality upon the charge in the indictment. Indeed, we do not see why it would not require the court to go further, and enter into the minds of the grand jurors, to ascertain whether they took the evidence into account when finding the indictment. Any such course would be utterly incompatible with the orderly or prompt dispatch of public business, and any proposition which leads to any such results cannot be sound.

Independently of any statute, the practice has long been in vogue to mark on the back of every indictment the names of the witnesses supporting it. This was usually done in this country by the prosecuting attorney, and in England by the clerk of the assizes. The object was twofold: First, to prevent malicious accusations being made by unknown and secret prosecutors; and, second, and chiefly, that the accused may to some extent be informed what witnesses he will have to confront at the trial.

In most states where there are statutes providing for such an indorsement they are held merely directory, and hence its omission not a ground for quashing the indictment; and while, in this state, there is a statute providing for setting aside an indictment on this ground, there are very good reasons why its scope should not be enlarged by any strained construction. In the first place, it is an omission which might be supplied by amendment without prejudice to the substantial rights of the defendant. In some states it is expressly provided that this may be done, and we are by no means prepared to say that it may not be done in this state. Again, as the state is not confined on the trial to the witnesses examined before the grand jury, the omission is not one of vital importance to the defendant.

But lastly, and chiefly, it seems almost an absurdity to set aside an indictment on any such ground, when the very fact of his making such a motion conclusively shows that the defendant already has the very information which the indorsement was designed to furnish him. These and other considerations of public policy and convenience lead us to the conclusion that all that the statute requires is that there be indorsed on the indictment the names only of those witnesses who were examined and gave material evidence upon the investigation of the particular charge upon which the indictment was found, and upon whose evidence it was found.

There is nothing in State v. Beebe, 17 Minn. 241, (Gil. 218,) in conflict with this view. All that was held in that case was that where, in the investigation by a grand jury of a charge against one person, evidence is elicited which proves that another person is guilty of the same or another crime, the jury may, on such evidence, indict the latter person without recalling and re-examining the witnesses, and that in such case it would be its duty to indorse the names of

the witnesses on the indictment.   But, where the grand jury, indorse only the names of those witnesses who were examined in the investigation of the particular charge against the defendant when it was under consideration, it seems to us that the only practicable rule is that it must be conclusively presumed that the indictment was found exclusively on the evidence of such witnesses.

Therefore, without considering or determining how far the proceedings before a grand jury may be disclosed by the grand jurors for the purposes of such motions as these, our conclusion is that, in restricting the inquiry within the limits stated in the ruling of the court, there was at least no error prejudicial to the defendants; also, that, upon the evidence admitted, there was no error in the decision of the motions.

It follows from what has been said that there is nothing in the point that the defendant Evans was compelled to testify against himself before the grand jury.   The case of *State* v. *Froiseth*, 16 Minn. 296, (Gil. 260,) furnishes him no aid on this point.   In that case it was expressly stipulated that the grand jury required the defendant to be examined as a witness touching the charge and matters set forth in the indictment; and the fact that his name was inserted as a witness at the foot of the indictment showed conclusively that it was found, in part, at least, on his evidence.

The action of the court on all points certified to us is affirmed, and the cause remanded for further proceedings.

(Opinion published 57 N. W. Rep. 455.)