THE STATE OF NORTH DAKOTA EX REL. GEO. F. SHAFER, Attorney General, and H. F. Horner, State's Attorney of Cass County, Relators, v. THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT IN AND FOR RANSOM COUNTY, and the Hon. Geo. M. McKenna, Judge thereof, Respondents.

(194 N. W. 745.)

**Courts — supervisory power of supreme court over inferior courts not affected because district court was acting within its jurisdiction.**

1. The power of the supreme court, under § 86 of the Constitution, to exercise superintending control over inferior courts is not affected by the fact that the district court was acting within its jurisdiction.

**Indictment and information — statutory provisions held to provide exclusive procedure governing motions to dismiss indictments.**

2. Sections 10,731, 10,732, 10,733 and 10,734, Comp. Laws 1913, are held to provide an exclusive procedure governing motions to dismiss indictments, and when indictments are erroneously dismissed upon motion, the further proceedings must be as contemplated in the statute.

Opinion filed July 25, 1923.

Courts, 15 C. J. § 535, p. 1104 n. 79; Indictments and Informations, 31 C. J. § 366 p. 796 n. 15.

Application for Supervisory Writ.

Writ denied.

*Geo. F. Shafer,* Attorney General, *H. F. Horner,* State's Attorney of Cass County, and *Geo. A. Bangs,* Special Assistant Attorney General, for relators.

*Burke & Burdick, Barnett & Richardson, Wolfe & Schneller,* and *Pierce, Tenneson, Cupler & Stambaugh,* and *W. S. Lauder,* for respondent.

BIRDZELL, J.   The attorney general has presented to this court an application for the issuance of a supervisory writ directed to the district court of the third judicial district and to the Honorable Geo. M. McKenna, judge, which shall require the respondent to vacate certain orders setting aside certain indictments.   After service of notice of the motion for the issuance of the writ, a hearing was had.   Upon the hearing the defendant objected to the jurisdiction of this court and argued orally in support of the objections filed.   This court subsequently ordered additional arguments on the following questions: 1. "Were the orders of the trial court erroneous?"   2. "If erroneous, has this court the power to rectify the error and reinstate the prosecutions, in view of the fact that the defendants were discharged and bail exonerated?"   The respondent has certified to the transcript of the proceedings below, which, including the original records and indictments, constitutes his return.

From the verified application, the transcript of proceedings certified by the respondent as a part of the return and from the exhibits, the following facts appear: On May 2, 1922, a grand jury was convened in Cass County and from that time until the 18th of May regular sessions were held and certain investigations conducted.   Among the matters investigated was the criminal responsibility, if any, of various individuals for the failure of the Scandinavian American Bank of Fargo. The sessions were attended by the state's attorney of Cass county, by the attorney general, a regular assistant attorney general and a special assistant attorney general.   During the sessions some forty-three witnesses appeared before the grand jury, and on the 16th and 17th days of May, thirty-five indictments were voted and returned against twelve defendants.   The indictments involved in this proceeding charge cer-

tain crimes against the defendants in connection with the operation of the Scandinavian American Bank, and upon each is indorsed the names of witnesses examined, the number varying for the different indictments from ten to twenty-one. Subsequently, the place of trial of the actions was changed from Cass county to Ransom county, and on March 6, 1923, motions to quash the indictments were heard before the respondent herein. Numerous grounds in support of the motion were urged, among them the following: That the attorney general and his assistant were permitted to be present during the proceedings of the grand jury in violation of § 10,666 of the Laws of 1913; that the special assistant was permitted to be present; that the special assistant was not duly qualified as a special assistant, not having received his appointment and qualified under it; that the evidence of a large number of witnesses covered a variety of crimes and the evidence was received while the grand jury was investigating under the general head of Scandinavian American Bank cases; that such evidence was received en masse against all the defendants; that the grand jury did not vote indictments against any defendants until the evidence had all been received; that the names of all the witnesses examined before the grand jury were not indorsed upon each one of the indictments; that the names of fourteen witnesses do not appear on any of the indictments returned in the Scandinavian American Bank cases; that, according to the minutes of the grand jury the attorney general was sworn as a witness in connection with the purported refusal of one defendant, F. W. Cathro, to appear as a witness before the grand jury and his name does not appear as a witness upon any indictment; and upon other grounds not necessary to mention here. The respondent at the hearing of the motion took certain evidence with reference to the grand jury proceedings and thereafter granted the defendants' motion to quash. The order entered in each instance sets aside the indictment and does not direct any further proceedings nor hold the defendants subject to further proceedings, as the court is authorized to do under §§ 10,732 and 10,733, Comp. Laws 1913.

At the outset of this controversy, the respondent herein objects to the issuance of any supervisory writ which will require further proceedings in the criminal cases in which orders setting aside the indictments were made on the ground that this court has jurisdiction neither

of the subject matter, nor of the person of the respondent, and that, irrespective of the power of the court to assume jurisdiction, a proper case for the exercise thereof is not made upon the face of the motion and of the application.

The application is one which is clearly addressed to the superintending jurisdiction of this court as the same is expressed in § 86 of the Constitution. The section reads:

"The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state and *shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law.*"

The two branches of jurisdiction conferred by this section, as well as that of the original jurisdiction conferred in the following section, have heretofore been sufficiently discussed and outlined in the adjudications of this court that there is no occasion now to attempt restatement of the principles that control generally in determining jurisdictional questions. State ex rel. Goodwin v. Nelson County, 1 N. D. 88, 8 L.R.A. 283, 36 Am. St. Rep. 609, 45 N. W. 33; State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234; State ex rel. Lemke v. District Ct. ante, 27, 186 N. W. 381.

In the last case cited this court, in an exhaustive opinion by Mr. Justice Christianson, reviewed the various decisions in this state and in Wisconsin, South Dakota and Montana, whose constitutions are quite similar in this respect to our own, and came to the conclusion that, by Section 86 of the constitution, this court is vested with a general superintending control over inferior courts, which not only enables it but requires it, in proper cases, to control the course of litigation so as to prevent miscarriage of justice, especially in cases where there is no appeal or where the remedy by way of appeal is inadequate. The power expressed in the constitution is unlimited, save as its exercise may be regulated and limited by statute. The only statute that has been passed in the whole period the constitution has been in force, which bears directly upon the jurisdiction of superintending control (chapter 118 of the Laws of 1891, § 7339, Comp. Laws 1913), in no way limits or restricts the power. On the contrary it seems to place the entire responsibility for the proper exercise of superintending jurisdic-

tion in the court, for it says, § 7339: "And in its superintending control over inferior courts it may issue such original and remedial writs as are necessary for the proper exercise of such jurisdiction." It is for the court, then, to determine when a proper case is presented for the exercise of its superintending control.

Is the power of the court in any way affected by the fact that the district court was acting within its jurisdiction? We are clearly of the opinion that it is not. In the case of State ex rel. Lemke v. District Ct. ante, 27, 186 N. W. 381, it was not suggested that the district court did not have jurisdiction to grant the restraining order which this court, in the exercise of its superintending control, set aside, nor does it appear that the action of this court was in any way influenced by the consideration as to whether or not the district court had jurisdiction to do what it did. And in Wisconsin, where the precedents under a constitution like ours are more numerous than elsewhere, it is held that the power of superintending control is not restrained or suspended by the fact that the court whose actions are to be reviewed has acted within its jurisdiction and has exercised judicial power. See State ex rel. Umbreit v. Helms, 136 Wis. 432–439, 118 N. W. 158. Indeed, it is difficult to comprehend the existence of an efficient power of superintending control if the power must always stop short of an interference when it is ascertained that the inferior tribunal was acting within the scope of its jurisdiction. How would it be possible, with the powers so limited, to "restrain excesses," "quicken neglects" and "prevent miscarriages of justice" if all of them may be practised with impunity within the range of the tribunal's jurisdiction?

Closely allied to the foregoing contention is the further proposition advanced on behalf of the respondent that the power of superintending control cannot be exercised by the court for the reason that there is nothing before the lower court which can be acted upon. The indictments have been dismissed, the defendants discharged and their bail exonerated. It is said that by reason of this fact the criminal cases are no longer pending before the district court; that the court itself has nothing before it to which it could address judicial action; and that this court cannot require any action to be taken that is not otherwise within the scope of the powers of that court. This argument when analyzed amounts to this: that an inferior court of general jurisdiction

can, by its own erroneous action, defeat the constitutional powers of this court. This is a reductio ad absurdum. It should require no argument to refute it. The truth is that the three branches of the jurisdiction of this court, namely, appellate, superintending control and original, were each granted in the Constitution with a view to the efficient exercise thereof by the court, and there were granted along with the powers the means and instrumentalities through which they might become effective. It may as well be argued that an inferior court acting erroneously might defeat the exercise of the appellate power of this court. The logical and complete answer to the proposition advanced is that the power of superintending control attaches where the error of the trial court begins, and when it is exercised it directs the trial court to go back to the point where the error was committed and to proceed henceforth in accordance with the law and within its jurisdiction. It may be that certain acts would be prerequisite to further proceedings, such for instance, in a criminal case, as a rearrest of the defendant, but that is not an insuperable objection to the further proceedings. So long as a defendant has not been placed in legal jeopardy his substantial rights are not invaded if he is brought to trial upon a legal presentment or information. He has no vested right grounded upon preliminary error. It might as well be argued that he could not be made to respond to a second indictment for the same offense.

This identical argument has likewise been answered in Wisconsin in the case of State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, at p. 624, 51 L.R.A. 33, 79 N. W. 1081. In answering the argument that mandamus would not be employed to correct erroneous action, the court said: "This difficulty, also, is more apparent than real. While it is true that the legitimate function of the writ of mandamus is to compel action by the inferior court, rather than to reverse action already taken, it would be gross absurdity to hold that, after refusal to perform the duty within its jurisdiction, the inferior court could nullify the constitutional grant of superintending power by the entry of any order or orders. This court holds its power under no such uncertain terms. Those powers are not dependent upon the speed with which the trial court enters orders. If it becomes necessary, in the due discharge of its power of superintending control, that orders of the inferior court be vacated, this court will not hesitate to compel the vacation of such

ɹrder by the inferior court by so framing its writs of mandamus. With the superintending control and the attendant writs this court took all the power necessary to make that control and those writs effective, and its arm is not nerveless because no writ may be found in the form books so framed as to meet the emergency. The writ may be framed to meet the exigencies of the case, and the court will discharge the duties of the trust reposed with it by the people, though it becomes necessary to modify and enlarge the terms of the ancient writ."

People ex rel. Robinson v. Swift, 59 Mich. 529, 26 N. W. 694, presents a situation parallel with the case at bar. The trial court had sustained the motion to quash an indictment and discharged the defendant from custody. Thereafter the Supreme Court entertained an application to review the action. It held that the action of the lower court was not final in the sense that it was beyond review and required the court to proceed with the prosecution under the indictments that had previously been set aside.

We are clearly of the opinion that the jurisdiction of this court under its superintending control power is not defeated by an erroneous order of the trial court discharging the defendants and permitting them to go hence without bail.

The question for our serious concern upon this application is, in view of the statutes of this state governing criminal procedure, is a case resented in which this court should exercise its superintending control? Let it be understood at the outset that no method of appeal has been provided whereby the state may secure a review of the action of the district court in a proceeding other than that which is now before us, and here we would emphasize also the fact that there is nothing to prevent a subsequent prosecution, unless it be, in some instances, the statute of limitations,—and we cannot readily determine upon this application in what instances the statute may be successfully invoked. We have in this state statutory provisions governing the procedure upon motion to quash indictments that are clear and explicit in their statement of consequences to follow the ruling of the district court and the effect is so clear as to have been necessarily within the contemplation of the legislative mind. These statutes originated some fifty years ago, apparently in a proposed codification of the law governing criminal procedure. We find them in force with substantial uniformity in

New York, California, Montana, North Dakota, South Dakota, Washington and Idaho. In some of these states, as for example California and South Dakota, provision is made for an appeal by the state from an order setting aside an indictment or information.

The statutory provisions as found in our Code are as follows:

"Sec. 10,731. If the motion is denied, the defendant must immediately answer the information or indictment, either by demurring or pleading thereto.

"Sec. 10,732. If the motion is granted the court must order that the defendant, if in custody, be discharged therefrom, or, if admitted to bail, that the bail be exonerated, or, if he has deposited money instead of bail, that the same be refunded to him, unless the court directs that another or an amended information be filed or that the case be submitted to the same or another grand jury; or, if the case is such that an information might have been filed against the defendant had a grand jury not been called at the time, or the defendant at any time waives a preliminary examination, in writing, the court may direct an information to be filed for the offense charged in the indictment set aside.

"Sec. 10,733. If the court directs that another or an amended information be filed or that the case be resubmitted to the same or another grand jury, the defendant, if already in custody, must so remain, unless he is admitted to bail; or, if already admitted to bail, or money has been deposited instead therefor, the bail or money is to be answerable for the appearance of the defendant to answer a new information or indictment, and unless another or an amended information or an information in the place of the indictment set aside, as provided in the last section, is filed within ten days from the date of the order, or the filing of the defendant's waiver of a preliminary examination, or a new indictment is found at the same or next term of the district court, as the case may be, the defendant must be discharged and his bail exonerated or money refunded as provided in the preceding section.

"Sec. 10,734. An order setting aside an information or indictment, as provided in this article is no bar to a future prosecution for the same offense."

It will be noticed that, following a favorable ruling of the district court upon the motion, the statutes do not contemplate any further proceedings upon the indictment and, by referring to § 10,993, it will be

seen that the state has no appeal from the order setting it aside. The sections quoted, together with the section on appeals, are to be found in the Code as early as 1877. See Revised Codes of Dakota for 1877, §§ 259 to 262 inclusive, and § 476, Code of Criminal Procedure.

On behalf the state it is argued that these statutes in themselves create a situation justifying the exercise of superintending control where a district court has erroneously dismissed indictments, as a result of which the state will be put to a large burden of expense in calling another grand jury or in proceeding through preliminary hearing and informations, and where, in some instances, new prosecutions may be barred by the statute of limitations. And on behalf the respondent the contention is made in substance that these statutes comprise exclusive regulations of criminal procedure. That as the consequence of an erroneous ruling of the trial court must necessarily have been within the contemplation of the legislature, the statutes must be deemed exclusive insofar as they speak upon the subject matter.

This court does not hesitate to confess a degree of embarrassment in the determination of the questions presented upon these arguments. On the one hand we are clear that the Constitution vests a superintending control generally over the actions of the district courts. On the other hand, we are confronted with the consideration that the legislature, to which must be conceded a large measure of responsibility and an extensive range of power in the regulation of criminal as well as civil procedure, has prescribed certain rules with a view, no doubt, to the accomplishment of the ends of criminal justice. Obviously, this court should not be deterred in the exercise of its jurisdiction unless it is of the opinion that in so doing it may defeat objects which the legislature had in view in prescribing a definite procedure to govern in such cases. No other consideration could properly, in our judgment, operate to deter the exercise of an undoubted power. When confronted with a situation of this character our rule of action should be that which was expressed by Chief Justice Marshall in Cohen v. Virginia, 6 Wheat. 264–404, 5 L. ed. 257–291, where he said:

"It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by be-

cause it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty."

Approaching, then, the consideration of the question with a view to determining whether or not, under the constitution and the statutes of this state, we should exercise the power of superintending control under the present application, let us first note carefully the language of the constitution. It says that this court "shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law." We have previously pointed out that no limitations have been imposed and that on the contrary the legislature has declared that this court might issue such writs as are necessary for the proper exercise of its jurisdiction. Whether or not, under a Constitution such as ours, this court must in all circumstances when applications are made appealing to its power of superintending control, exercise an independent judgment entirely apart from the judgment which has been expressed by the legislature, may well be open to serious question. In Wisconsin, Michigan and perhaps some other states, the grant of the complete superintending power is independent of legislative regulation or limitation. The language is "the supreme court shall have a general superintending control over all inferior courts." That this broad grant is directly responsible for the assumption by the Wisconsin court of a high degree of responsibility in the exercise of the power, is made apparent from the language employed by Justice Winslow in the case of State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, at p. 626 (51 L.R.A. 33), 79 N. W. 1081, where, he said:

"Even admitting that issues of fact were raised by the answer, we cannot admit that the legislature has any power to deprive this court of any part of its constitutional jurisdiction to fully hear and try such questions. By the Constitution this court was given power to exercise fully and completely the jurisdiction of superintending control over all inferior courts. This power carries with it not only the writs necessary to its exercise, but the right to hear and determine the cause when

the writ has brought it before the court. No part of that power can be taken away by a statute. This court will always pay all due deference to the legislative will, and upon mere questions of practice or orderly proceeding will heed and conform to the statute; but when the statute invades or attempts to take away any of the constitutional powers of the court the court would be untrue to itself, and to the people, from whom it holds its commission, if it permitted the statute to control. As said in Klein v. Valerius, 87 Wis. 54, 22 L.R.A. 609, 57 N. W. 1112: 'It must be remembered that this court as well as the legislature gets its judicial power and jurisdiction directly from the constitution' . . . but the statute cannot be considered as obligatory upon the court, especially in a case like the present, where the questions at issue arise upon the record alone, and where the course presented by the statute would amount to a denial of relief. Such a holding would amount to a practical abdication of constitutional powers, or rather, perhaps, to a submission to legislative invasion of constitutional powers."

Since the legislature has not in any manner attempted to limit the powers of this court with respect to superintending control, it may well be inferred that the power is one to be exercised whenever, in the judgment of the court, a situation calling for its exercise exists; but, nevertheless, we are of the opinion that action by a district court, under the express provisions of a statute which is attended by no consequences other than such as are likewise within the purview of the statute, presents a different situation to the reviewing court, where its supervising power is invoked, than is presented where the action of the inferior tribunal is based merely on its common law or inherent powers. In the latter situation (see People v. Glen, 173 N. Y. 395–400, 66 N. E. 112), the court is guided by a common law that is largely the creation of the courts; in the former it is but an instrument in carrying out a legislative plan, intended, doubtless, to be an improvement upon the common law. If its action as a common-law tribunal is out of accord with accepted law, it may properly be subject to supervision. But where it seeks merely to carry out the mandates of a statute and where its action either way is attended by consequences especially provided in the act, manifestly a different situation is presented to the supervising authority.

49 N. D.—72.

In the respect indicated above, the cases relied upon by the relator, principally People ex rel. Robinson v. Swift, 59 Mich. 529, 26 N. W. 694; State ex rel. McGovern v. Williams, 136 Wis. 1, 20 L.R.A.(N.S.) 941, 116 N. W. 225, and State ex rel. Umbreit v. Helms, 136 Wis. 432, 118 N. W. 158, are not parallel with the situation before us, however persuasive they may be as authorities on the question of power. It may be noted, too, that, closely following the decision of the last cases cited from Wisconsin, the legislature amended the appeal statute by providing for an appellate review of the orders of the circuit courts quashing indictments before jeopardy has attached. See chap. 324, Wis. Laws for 1909 and chap. 187, Wis. Session Laws of 1911.

Reference to our statutes will disclose that the action of the district court in ruling on the motion might be equally erroneous even though he had expressly provided that the defendants be held subject to further prosecution and though the bail had not been exonerated. Proceedings on the original indictments are equally at an end. It might be equally erroneous though, following such order, the matter had been submitted to a second grand jury and no indictment returned. The defendant not having yet been in jeopardy, it might be urged, with logic as persuasive as that employed here, that this court should exercise its superintending control to prevent a guilty defendant from escaping prosecution under the original indictment erroneously set aside. From our consideration of the statute, we are convinced that the legislature intended to provide an exclusive means for conducting the prosecution of a defendant where an indictment was quashed by the district court acting within its jurisdiction, and being of this opinion, we think the responsibility for error should be held to lie where the legislature placed it. If in particular cases it may result in the escape, on technical grounds, of persons who should be punished for public offenses, it may well be observed that this is only one of numerous instances where the legislature, acting within its unquestioned sphere, enables technicality to defeat justice. An instance of this, gathered from some of the cognate provisions of the law in question, will suffice for an illustration. Suppose that a crime has remained hidden from the view of the prosecutor until shortly before the expiration of the statute of limitations. The prosecutor conducts an investigation before a grand jury resulting in an indictment. Through oversight the grand jury neglects

to indorse upon the indictment the name of one of the witnesses examined before it and when the accused is arraigned, after the bar of the statute has attached he moves to set aside the indictment on the ground that the name of a witness examined before the grand jury and all the time known by him to be one of his accusers has been omitted from the indictment, clearly such an error affects no substantial right. A great jurist has said that it seems almost an absurdity to set aside an indictment on any such ground (Mitchell, J., in State v. Hawks, 56 Minn. 129, 57 N. W. 455–458); yet the legislature has seen fit to make it the mandatory duty (Comp. Laws 1913, § 10,728) of the court in these circumstances to dismiss the indictment. It would not be argued by anyone that a miscarriage of justice directly resulting from legislative technicality could properly be prevented by the exercise of superintending control by a court. Where a statute indicates the procedure to be followed upon the granting or setting aside of an indictment upon motion, as clearly as does the statute in question, and, where it is apparent on the face of the law that the legislature contemplated, in the event of a ruling adverse to the state, nothing but proceedings upon a subsequent information or indictment, and, where, the subject-matter is as appropriately one for legislative regulation, we are of the opinion that the statute must be held to be exclusive. From this it follows that the writ should not issue in this case.

We have given to the questions presented upon this application that careful and painstaking consideration which in our judgment is merited by their importance. The matters that have been urged upon us in this connection reach not only to the very foundation of the power of this court, but, as will be seen from the foregoing, lead at least to the borderline of the field of conflicting powers of the co-ordinate branches of the government. It must be obvious that questions of such delicacy would not be considered by this court if, in our judgment, occasion did not exist for so doing. The occasion in this instance, of course, can be none other than our opinion that, in major part at least, the action of the trial court was erroneous. The conclusion at which we have arrived with respect to interference makes our views on the merits of the action taken below of minor importance—especially in view of the infrequency of grand jury proceedings in this state; but, as our serious consideration of the delicate questions above discussed must necessarily be

taken as an implied holding adverse to the action of the lower court, we deem it a duty to state briefly only our adverse viewpoint.

The district court, in disposing of the motion, filed an extended memorandum opinion in which he discussed, somewhat elaborately, various grounds of the motion. A large portion of the discussion is embodied under the heading: *"Can all the testimony of a large number of witnesses be taken 'en masse,' before a grand jury, relating to a large number of crimes, against a large number of different persons, without special reference to any specific charge, or any specific defendant and such testimony en masse be considered by the jury at the close of all the testimony, and indictments found against a large number of persons, without vitiating the indictments so found?"* The query itself, as well as the discussion under it, reflects the viewpoint of the trial court and it will serve as well as any more elaborate statement might serve as a basis for indicating wherein we differ in opinion. In our judgment the obvious answer to the query is yes. It is manifestly not directed to any matter that is vital to the validity of any indictment. The statute imposes no particular order for the calling of witnesses before a grand jury, nor does it limit the number of subjects or objects that might be under investigation during the grand jury session, nor the number of witnesses that may be called to testify concerning any public offense, nor the number of offenses concerning which one witness may testify, nor is the grand jury bound to give legal definition to a course of reprehensible conduct and head its investigation with the name of a public offense before it can proceed legally to investigate it. The grand jury is an inquisitorial body, sitting largely without court guidance. Its investigations are ex parte. It is not trying defendants, it is ascertaining if they should be placed on trial. When viewed from this standpoint many of the irregularities which seemed vital to the trial court, to us seem but technical at most, and matters which to the trial court seemed to absolutely preclude intelligent consideration, at most involved only the convenience or inconvenience of the jury. If it be assumed that the members sought conscientiously to perform their duty and were possessed of reasonable intelligence, and if their action be clothed with the reasonable presumptions that should obtain, conclusions at variance with those of the trial court are necessitated in many instances. The substantial right of no individual who is indicted by a

grand jury is violated if the grand jury has in fact received evidence sufficient in its judgment to warrant a conviction and if it has in fact indorsed the names of the witnesses giving such evidence upon the indictment returned and has otherwise safeguarded its sessions in the manner required by law. It is significant, in this connection, that with the possible exception of the testimony given by the attorney general relating to the nonappearance of Cathro before the jury, the defendants, who challenged the indictments, did not show that the name of any witness, who had given testimony concerning the charge against any defendant, had been omitted from the indictment. In our opinion, all of the indictments, except those against Cathro, upon which were not indorsed the name of the attorney general, were clearly valid as against the objection that the names of witnesses examined before the grand jury were not indorsed thereon.

We deem it unnecessary to engage in a further discussion of the merits of the action of the district court. It follows from what has been said that the supervising writ must be denied and it is so ordered.

CHRISTIANSON and NUESSLE, JJ., and KNEESHAW, Dist. J., concur.

Mr. Justice JOHNSON, being disqualified, did not participate, Honorable W. J. KNEESHAW, of the Second Judicial District, sitting in his stead.

BRONSON, Ch. J. (concurring). I agree that the court should not invoke the power of superintending control upon the original application as presented. In a recent case this court has said that this power is a branch of the sovereign power of the people, committed as a sacred charge to this court, not to be exercised upon light occasion, or when other and ordinary remedies are sufficient. State ex rel. Lemke v. District Ct. ante, 27, 186 N. W. 381, 387. The grant of this power was not intended to provide for the power of review as by appeal. State ex rel. Red River Brick Corp. v. District Ct. 24 N. D. 28, 32, 138 N. W. 988. Where it is sought to compel action by an inferior court, the power may not be invoked to correct errors in a case where the lower court has not refused to act but has committed some mistake. State ex rel. Northern P. R. Co. v. Judge of District Ct. 3 N. D. 43, 53 N.

W. 433; State ex rel. Atty. Gen. v. Dist. Ct. 13 N. D. 211, 218, 100 N. W. 248.

The constitution provides that this court shall have a general superintending control over all inferior courts *under such regulations and limitations as may be prescribed by law*. N. D. Const. § 86. The Wisconsin Constitution does not contain the underscored words above quoted. See Wis. Const. art. 7. Thus, the Wisconsin cases cited by the petitioner can be distinguished in application of the power. The statute provides that this court in its superintending control over inferior courts may issue such original and remedial writs as are necessary to the proper exercise of its jurisdiction of superintending control. Comp. Laws 1923, § 7339.

In the original application presented to this court it appears that the trial court, upon motion made, set the indictment returned upon statutory grounds.

The statute in such case provides that the court, if it sets aside the indictment, *must order that the defendant,* if in custody, *be discharged* therefrom or, if admitted to bail, that the *bail be exonerated* or, if he has deposited money instead of bail, that the same be refunded to him *unless the court directs that another or an amended information be filed or that the case be submitted to the same or another grand jury.* Comp. Laws 1913, § 10,732. Further, the statute provides that, "if the court directs that another or an amended-information be filed or that the case be resubmitted to the same or another grand jury, the defendant, if already in custody, must so remain unless he is admitted to bail; or, if already admitted to bail, or money has been deposited instead therefor, the bail or money is to be answerable for the appearance of the defendant to answer a new information or indictment, and unless another or an amended information or an information in the place of the indictment set aside, as provided in the last section, is filed within ten days from the date of the order, or the filing of the defendant's waiver of a preliminary examination, or a new indictment is found at the same or next term of the district court, as the case may be, *the defendant must be discharged* and *his bail exonerated* or money refunded as provided in the preceding section." Comp. Laws 1913, § 10,733.

These statutory provisions give to the trial court a power to order that another or amended information be filed or that the case be resub-

mitted to the same or another grand jury. It grants the additional power to the trial court to retain the defendant in custody if he so directs. These statutory provisions so quoted are found in the law of New York, Montana, and California. Cook, Crim. Code (N. Y.) 1918, §§ 317, 318; Mont. Rev. Codes 1907, §§ 9195, 9196; Penal Code, Kerr's Cyc. Code (Cal.) §§ 997, 998. This power so granted to the trial court did not inhibit or deny the power and authority of the prosecuting officials to again resubmit before a grand jury the subject-matter involved in the indictment quashed or to institute proceedings otherwise for a further prosecution. People v. Rosenthal, 197 N. Y. 395, 46 L.R.A.(N.S.) 31, 90 N. E. 991; People v. Breen, 130 Cal. 74, 62 Pac. 408.

Accordingly, the trial court has jurisdiction under the statute to hear the motion to quash the indictment. It had the power to deny or grant this motion. With jurisdiction over the indictment and the person of the defendant, it heard the motion to quash. It granted such motion. It also possessed, then, pursuant to the statute, the jurisdiction and the power to direct the prosecuting officials to resubmit the subject matter to the same or another grand jury or to take proceedings for the filing of an information; also to retain the custody of and jurisdiction over the defendants. The trial court, pursuant to its power and authority, did not order that the subject matter be referred to the same or another grand jury. Thereupon, pursuant to the statute, it became the duty of the trial court to discharge the defendants and exonerate their bail. This was done. Thereupon the trial court dispossessed itself of jurisdiction over the person of the defendants and over the subject matter then pending before him. Thus, pursuant to the statute, it is clear that the statute has provided a specific method for further prosecution when an indictment has been quashed even though the trial court has erroneously quashed the same. First, it permits the trial court to direct the subject matter to be submitted to the same or another grand jury and to retain custody of the defendants concerned.; second, the prosecuting officials have the power and authority, irrespective of the court's order, to institute another proceeding either before a grand jury or by way of a preliminary examination and an information to bring the matter before the court, not in the same proceeding but in another proceeding. Section 10,733, Comp. Laws 1913, specifically provides

that an order setting aside an indictment is no bar to a future prosecution for the same offense. I am accordingly of the opinion that the statute has explicitly provided for future proceedings in cases like the case at bar where an indictment has been quashed; that, pursuant to the statute, the trial court, after it made its order discharging the defendants and no order directing the prosecuting officials to resubmit the subject matter to the same or another grand jury, lost its jurisdiction and did not thereafter possess the power or the authority to set aside its own order and reinstate the indictment; State ex rel. Gold v. Secrest, 33 Minn. 381, 23 N. W. 545. See State v. Kelsey, ante, 147, 190 N. W. 817. The statute provides the method for reinvesting jurisdiction through independent proceedings.