PICKUS, Plaintiff, v. PERRY, et al, Defendants.

(239 N. W. 839.)

(File No. 7357.   Opinion filed December 29, 1931.)

*Williamson, Smith & Williamson,* of Aberdeen, for Plaintiff.

*Roger A. Campbell,* State's Attorney, and *H. O. Hepperle,* Special Assistant to State's Attorney, both of Aberdeen, for Defendants.

CAMPBELL, J.   Plaintiff Pickus was indicted of a criminal offense.   Contending that the body which returned the indictment was not in fact and in law a duly and legally constituted grand jury, Pickus moved in the court below to quash the indictment, and, that motion being denied, demurred thereto, which demurrer was overruled, whereupon he interposed a plea of not guilty and the matter stands for trial in the circuit court.

At this stage of the proceedings, Pickus invoked the general superintending control of this court over inferior courts by applying here for an order to show cause directed to the learned circuit judge, requiring him to show cause in this court why the order denying the motion to quash in the court below should not be set aside and an order entered quashing the indictment. In other words, Pickus seeks to have this court exercise its power of general superintending control to determine in advance of trial the correctness of the ruling of the court below in refusing to quash the indictment.

So far as we can ascertain, this application presents a matter of first impression in this court, although precedents exist in other states. It was immediately apparent that disposition of the application involved the determination of some rather perplexing question as to the existence of jurisdiction and discretion in the exercise hereof. These questions being important and, in this court at least, novel, we deemed it proper to grant the show cause order and resolve the problems involved upon more mature consideration, after hearing, and with the aid of arguments of counsel, rather than to dispose of them summarily by refusing to issue the order.

The order accordingly being issued and served, the entire record below has been certified to us. The defendant circuit judge has answered to the merits, maintaining the correctness of his rulings which are sought to be brought in question, and has also moved to quash the present proceeding upon jurisdictional grounds. The matter was orally argued at length upon the return day, December 19th, typed briefs have subsequently been filed by leave of this court in behalf of both parties, and the matter is now for disposition.

Three inquiries immediately present themselves for consideration which may be stated in logical sequence as follows:

First, does this court have a jurisdiction such as is invoked by the plaintiff in this proceeding?

Second, if such jurisdiction exists, does it appear that the instant case is one wherein this court in its discretion should exercise such jurisdiction?

Third, if the jurisdiction invoked exists and if this court, as a matter of sound judicial discretion, believes it should be exercised in the instant case, what of the merits; or in other words,

did the defendant circuit judge err, or did he not, in refusing to quash the indictment below and in overruling the demurrer?

It is plain that the matter is not reached upon the merits unless and until the first and second queries be determined in the affirmative. A negative resolution of either of them requires the dismissal of the present proceeding in this court without any determination of the question of whether defendant circuit judge was right or wrong in his rulings below.

Section 2 of article 5 of the Constitution of South Dakota provides that this court "shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law.". That this section of the Constitution affirmatively confers a jurisdiction upon this court beyond and in addition to the ordinary appellate jurisdiction can hardly be questioned. Referring thereto in a comparatively early case (1892), this court said: "This provision materially enlarges the powers of otherwise only appellate courts, and enables them, by means of their various writs, prerogative and remedial, to control and correct the decisions of inferior courts in special cases, and prevent injustice and irreparable injury. When the circumstances demand an immediate review, the case is urgent, and an appeal will not afford an adequate remedy." City of Huron v. Campbell, 3 S. D. 309, 53 N. W. 182, 184. See, also, Vine v. Jones, 13 S. D. 54, 82 N. W. 82.

Similar constitutional provisions exist in many of the states, and, even in those states where such jurisdiction is not affirmatively conferred by express words upon the court of last resort, it is nevertheless generally held that a broad power of superintending control inheres in such courts as a common-law power. Numerous cases dealing with the origin, scope, and extent of such power of superintending control and the exercise thereof will be found collected in two careful case notes, one in 20 L. R. A. (N. S.) at page 942, and one in 51 L. R. A. at page 33. An examination of even a portion of the many cases cited in the notes referred to is more than sufficient to justify the conclusion of the annotator (51 L. R. A. note page 33 at page 111) that "the power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded

only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted."

■ No attempt has ever been made in this state to place limitations upon such power, and it would be difficult, if not impossible, precisely to define and bound its scope and extent. It is most salutary we think that such a power should exist in a court of last resort in any state. The existence of this power partakes of the nature of an ultimate safeguard, to be availed of, not as an instrument of routine procedure, but in extraordinary and unusual situations where customary remedial procedure is inadequate, and resort must be had to some such high power for the public good or for the prevention of gross injustice and irreparable injury. The very nature of the power, its scope and lack of limitation, impose upon the court to which it is intrusted a most serious responsibility to make a prudent and a sparing use of it, and to employ it in those cases only where the exercise of a sound judicial discretion clearly indicates a necessity for its use.

■ The exercise of the power of superintending control is always a matter of discretion, never a matter of absolute right, and it is the clear weight of authority that the power will not ordinarily be exercised as a substitute for appellate jurisdiction, or where other remedy exists, excepting only in those cases where the other remedy is so slow, difficult, or inadquate that to compel resort thereto amounts to a denial of justice. In support of these limitations which courts holding this broad power of superintending control have themselves imposed of their own discretion upon their exercise thereof, the cases might be multiplied at length. Many will be found collected in the notes previously cited. A sound and careful statement of the principles which ought to actuate the court in determining in its discretion whether or not to exercise such power may be found in the concurring opinion of Marshall, J., in State ex rel. Umbreit v. Helms, 136 Wis. 432, 118 N. W. 158, 169, the last paragraph of which we quote as follows: "By the policy of this court its superintending control power is to be exercised only when the right of the matter involved is plain, there is no other

efficient remedy for its invasion or denial, such invasion or denial is prejudicial, and, generally, and especially as to errors not strictly jurisdictional, the case presents circumstances of exceptional or extraordinary hardship."

Coming to an examination of the precedents of dealing with the particular use of the power of superintending control here requested by the plaintiff, namely, to review in advance of the trial of a criminal case the correctness of the ruling of the court below as to the validity of the indictment, we find numerous cases. To cite them all, analyze each one, and point out its similarity to, or distinguishability from, the pending case would not be profitable. We may mention, among others, People v. Swift, 59 Mich. 529, 26 N. W. 694, where the Supreme Court on application of the state reviewed an order of the trial court quashing an indictment. The same thing was done by the Supreme Court of Wisconsin in State ex rel. McGovern v. Williams, 136 Wis. 1, 116 N. W. 225, 20 L. R. A. (N. S.) 941. Per contra, such exercise of the power on the application of the state was refused in State ex rel. Shafer v. District Court, 49 N. D. 1127, 194 N. W. 745. An order of the lower court refusing to quash an indictment was reviewed by the Supreme Court of California in the exercise of its superintending control on application of the defendant, even in the absence of a constitutional provision conferring superintending control, in Bruner v. Superior Court, 92 Cal. 239, 28 P. 341, chiefly upon the theory that the questions could not in any other manner be subsequently presented for review, but, as defendant here points out in his brief, the practice did not continue to prevail in California. See Re Hatch, 9 Cal. App. 333, 99 P. 398. A like ruling below was reviewed before trial on application of the defendant by the Supreme Court of Michigan in People v. Lauder, 82 Mich. 109, 46 N. W. 956, 961, apparently upon the theory that the case was somewhat exceptional, the court saying: "Usually, such questions must come before us on writ of error or certiorari after trial and judgment. In view of the importance and the number of cases involved in this matter, and the great expense that would necessarily be incurred in the trial of them, we have thought it best for the public interest, and the good of all concerned, that we should make this an exceptional case, and for once relax the rule to which we have heretofore always adhered."

But the Michigan court appears thereafter to have refused to exercise its superintending control in numerous similar cases. See People v. Thompson, 108 Mich. 583, 66 N. W. 478; Maynard v. Ingham, Circuit Judge, 124 Mich 465, 83 N. W. 102.

■ Turning to a consideration of the instant case, it would seem clear that plaintiff is not without remedy if his present application for determination of the matter on the merits be denied. It is conceded by all parties to this record that if plaintiff stands trial and is convicted he may present for review upon appeal from the judgment of conviction all objections to the indistment which he now seeks to have determined in this proceeding. In any state of organized society, the effort to attain the greatest good for the greatest number is bound from time to time to be accompanied by various impositions upon the individual of which the law cannot take cognizance, either by way of prevention or compensation. Theoretically perhaps it should be possible to prosecute to a court of last resort for determination every claim of reversible error in both civil and criminal cases at the moment of commission and before further proceeding with the trial. If reversible error has been committed, there is a certain moral, if not legal, injustice in compelling the trial to proceed further. Nevertheless the practical necessities of the case so require. Upon any other basis the work of the courts would become so confused, complicated, and burdensome, as to be impossible of accomplishment. The statute of this state recognizes no right of appeal on the part of a defendant in a criminal case prior to final judgment of conviction. Section 5031, R. C. 1919. To hold that in every criminal case refusal to quash an indictment might be reviewed by this court prior to trial in the exercise of its superintending control would be an abuse of the power of this court and would amount, in substance and practice, to be unwarranted judicial amendment to the legislative act with reference to criminal appeals. No contention is made in this proceeding that this court ought to exercise such power in every criminal case. What then are the particular circumstances by reason of which the statutory remedy of appeal from final judgment of conviction, if there should be a conviction, is not an adequate remedy for the present plaintiff, and by reason of which this court should here exercise a high and extraordinary power which concededly it should not exercise in every criminal case? In the

final analysis, the only special circumstance upon which plaintiff can rely to distinguish this from any other criminal case, and to justify the exercise in this case of the extraordinary power of superintending control which he has invoked, appears to us to be the fact that the trial of the case will probably require considerable time and will be very expensive both for the plaintiff and for the state and county. We know of no means whereby the probable length of time and expenditure of money that will be required to try a criminal case can be made, in and of themselves, a satisfactory test of whether or not this court should exercise its superintending control to determine the validity of an indictment before trial. The expenditure of a relatively small amount of money in his defense may in fact impose considerably greater hardship upon one defendant than the expenditure of a much larger amount may impose upon another defendant. We cannot feel upon reason, or in the light of the authorities, that the circumstances here are shown to be of such exceptional or extraordinary hardship (the claimed error not being strictly jurisdictional) as to justify our intervention at this time.

We are therefore of the opinion, assuming the existence of the jurisdiction invoked by the plaintiff, that no case has been made which permits or requires us, as a matter of sound judicial discretion, to exercise such jurisdiction here. It follows that we must refuse to consider the matter upon the merits.

To avoid if possible any misinterpretation of our refusal to assume jurisdiction or the drawing of any unjustifiable inferences from such refusal, it may be proper to state that we began our investigations in this proceeding with the questions of the existence of jurisdition, and whether or not we ought, as a matter of discretion, to assume jurisdiction. We became convinced that we ought not, upon the considerations hereinbefore set out. Arriving at that conclusion, which is determinative of this proceeding, we have not pursued our inquiries further, nor examined into the merits. We have not arrived, even tentatively, at any opinion as to the validity or invalidity of the indictment below; nor have we endeavored so to do.

The order to show cause heretofore issued herein will be quashed, and this proceeding dismissed.

POLLEY, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.