# THE STATE OF NORTH DAKOTA for Itself and on Behalf of All Creditors of Defendant Banks, Respondent, v. FIRST STATE BANK OF JUD, Mohall State Bank and Numerous Other Insolvent Banking Corporations, Appellants.

(202 N. W. 391.)

**Constitutional law — governmental power vested in legislature as granted to other departments.**

1. Under the Constitution of this State all governmental power is vested in the legislature except such as is granted to the other departments of government, or expressly withheld from the legislature by constitutional restrictions.

**Constitutional law — legislative act valid unless violative of express or implied restrictions of constitutions.**

2. The only test of the validity of an act regularly passed by the legislature is whether it violates any of the express or implied restrictions of the State or Federal Constitutions.

**Constitutional law — all appropriate means not prohibited may be constitutionally employed to carry legitimate legislative object into effect.**

3. If the end be legitimate, all means which are appropriate, which are plainly adapted to that end, and which are not prohibited, may constitutionally be employed to carry it into effect.

**Constitutional law — litigant can question validity of statute only when applied to his disadvantage.**

4. A litigant can be heard to question the validity of a statute only when, and in so far as, it is applied to his disadvantage.

**Constitutional law — banks and banking — courts — legislative authority.**

5. For reasons stated in the opinion it is held that chapter 137, Laws 1923 is constitutional; that the legislature in the exercise of its constitutional powers as the lawmaking body of the state may prescribe the conditions under which a banking corporation organized under the laws of this state shall be deemed insolvent; authorize the Attorney General of the State to bring an action in the name of the state for the liquidation of such bank, or banks, vest the district court of Burleigh County with jurisdiction of such action, and require the supreme court, in the exercise of its supervisory jurisdiction over inferior courts, to designate a district judge to hear and determine such action and appoint a receiver of the bank, or banks, involved in such action.

Opinion filed December 31, 1924.   Rehearing denied January 20, 1925.

Banks and Banking, 7 C. J. § 10 p. 480 n. 55, 57; § 474 p. 724 n. 72; § 482 p. 727 n. 7; § 507 p. 737 n. 5.   Constitutional Law, 12 C. J. § 1 p. 676 n. 5; § 177 p.

760 n. 57; § 205 p. 776 n. 43; § 212 p. 780 n. 98; § 215 p. 784 n. 36; § 216 p. 785 n. 56; § 222 p. 794 n. 23, p. 797 n. 34; § 234 p. 802 n. 94, 7; § 236 p. 804 n. 27, p. 805 n. 37; § 237 p. 805 n. 46, 48, p. 806 n. 51; § 377 p. 874 n. 9; § 387 p. 883 n. 98, p. 885 n. 11; § 390 p. 887 n. 38; § 649 p. 1024 n. 76; § 1002 p. 1226 n. 86, 89 New. Control, 13 C. J. p. 838 n. 28 New. Courts, 15 C. J. § 13 p. 725 n. 82; p. 726 n. 10 New; § 446 p. 1026 n. 37. Judges, 33 C. J. § 112 p. 978 n. 84. Statutes, 36 Cyc. p. 971 n. 5; p. 986 n. 71, 72; p. 990 n. 84; p. 1012 n. 58 New. Superintend, 37 Cyc. p. 593 n. 23. Venue, 40 Cyc. p. 40 n. 68.

Appeal from the district court of Burleigh County, *Cooley,* Special J.

Defendant appeals from an order sustaining demurrer to his answer.

Affirmed.

*Francis Murphy,* for appellants.

Where an action is brought in a court which has no jurisdiction thereof, such court has no power to transfer the same and should be dismissed. 11 Cyc. ¶ 93 and cases cited; New Orleans Mail Co. v. Fercudez, 12 Wall. 13, 20 L. ed. 249; Re Haines, 30 Fed. 770.

To give any such proceedings any validity there must be a tribunal competent by its constitution—that is by the law of its creation—to pass upon the subject matter of the suit. Penoyer v. Neff, 95 U. S. 714.

No judgment of the court is due process of law if rendered without jurisdiction in the court. Scott v. McNeil, 154 U. S. 34.

The words "due process of law" when applied to judicial proceedings mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity there must be a tribunal competent by its constitution to pass upon the subject matter of the suit. See also Hassall v. Wilcox, 130 U. S. 493; Hovey v. Elliott, 167 U. S. 409; Selig v. Hamilton, 234 U. S. 263; Straus v. Foxworth, 231 U. S. 162; New York L. Ins. Co. v. Dunlevy, 241 U. S. 518.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attoney General, for respondent.

The broadest meaning that the words of a title are susceptible of may be given to them and the law will not be declared invalid because

the words are not well selected. Powers Elevator Co. v. Pottner, 16 N. D. 359.

The title should be liberally, and not technically construed. The construction should be reasonable. Conflict with the constitutional provision must appear clear and palpable and, in case of doubt as to whether the subject is expressed in the title, the law will be upheld. State ex rel. Erickson v. Burr, 16 N. D. 581.

The appointment of a receiver by the legislature to settle the affairs of an insolvent bank has been upheld not to be a judicial act, to the extent of being in violation of a constitutional provision vesting the judicial powers in the courts of the State. 12 C. J. 815.

Was the appointment of a receiver a judicial act? If so, it is very clear that it could not be made by the legislature without violating an express provision of the constitution. But it does not seem to us to be of this description of power. It was not a case of controversy between party and party; nor is there any decree or judgment affecting the title to property it determines no right, legal or equitable. The receiver is merely to collect, hold and disburse the assets of the bank for the benefit of all concerned; and it is in the power of the Courts to direct and control him in the proper execution of his duties. Garey v. Giles, 9 Ga. 253.

The general power of the legislature to appoint trustees to execute trusts cannot be questioned. Boward v. Thornton, 50 Mo. 291.

The legislature can pass such laws as it may judge expedient, subject only to the prohibitions of the Constitution. If it overstep those limits and attempts to impair the obligation of contracts or to pass ex post facto laws, or grant special acts of incorporation for other than municipal purposes, the judiciary will set aside the legislation and protect the rights it has assailed. Within certain limits it is independent; when it passes over those limits, its power for good or ill is gone. People ex rel. Smith v. Judge, Twelfth Dist. 17 Cal. 548.

The business of banking is a proper subject for regulation under the police power of the state because of its nature and the relation which it bears to the fiscal affairs of the state and the revenues of the state. 7 C. J. 480; McDavid v. Bank, 69 So. 452.

Whenever a statute from which a court derives its jurisdiction in general cases, is repealed, the court cannot proceed under the repealed

statute even in suits pending at the time of the repeal unless they are saved by a clause in the repealing statute. Hunt v. Jennings, 33 Am. Dec. 465.

It is a well settled rule of law where two legislative acts are repugnant to or in conflict with each other that the latest expression of the legislature will most control even though it contains no repeal clause.

CHRISTIANSON, J.   This action was instituted by the attorney general under chapter 137, Laws 1923, to liquidate, and wind up the affairs of, the Mohall State Bank.   The complaint in the action is in form and substance as prescribed by said chapter 137, and alleges that said Mohall State Bank closed voluntarily on November 24th, 1920; and that one W. H. McIntosh is the receiver in charge of such bank. Said McIntosh appeared and interposed an answer to the complaint. In such answer he admitted that the bank had been closed as alleged in the complaint and that he was the receiver in charge.   He further alleged that he had been appointed such receiver in an action theretofore commenced in the district court of Renville county in this state and was duly qualified and acting as receiver pursuant to such appointment. In such answer he further asserted that the law under which the attorney general brought this action, viz., chapter 137, Laws 1923, is unconstitutional and void.   The plaintiff interposed a general demurrer to this answer.   The demurrer was sustained and said McIntosh has appealed.

The sole question presented and argued on the appeal is: "Is chapter 137, Laws 1923, unconstitutional?"   Appellant contends this question should be answered in the affirmative, and the action ordered dismissed.

The act in question reads as follows:

"Whereas, there are a large number of insolvent banks in this state, located in many different communities, with thousands of depositors and other creditors, within and without the state, the obligations of which banks have remained for a long period of time unpaid, and by reason thereof the credit of the state is being injured, and hardship and injury being inflicted upon thousands of its citizens and citizens of other states, and

Whereas, in the judgment of the legislative assembly the ordinary ju-

dicial and administrative machinery of the state is insufficient and illy adapted to the successful and expeditious administration of the affairs of such insolvent banks and their assets are being absorbed and depleted by expenses of administration, without corresponding liquidation of their obligations, and by reason of lack of sufficient legal authority to deal with their assets and administer their affairs, such assets are being appropriated by secured creditors in large amounts beyond the indebtedness secured, and the ordinary creditors are being thereby injured. and the depositors' guaranty fund is being depleted and overwhelmed with liabilities which it is liable to be unable to discharge, and

Whereas, by reason of the facts a situation of great public interest and concern has been created affecting the people of the state, as a whole, which cannot be properly and sufficiently protected according to the ordinary course of legal proceedings, and the legislature deems it proper for the Supreme Court to assume and exercise its original jurisdiction upon the ground that it is necessary for the protection of public interests, it is hereby enacted as follows:

Section 1. The Supreme Court of the State of North Dakota is hereby given, and requested to exercise, original jurisdiction of the insolvency proceedings to liquidate and wind up the affairs of all insolvent state banks within the state, at the time of the taking effect of this Act, and all such as may become insolvent during its continuance.

Section 2. Immediately upon the taking effect of this Act the State Examiner shall certify to the Attorney General a list of all state banks in the state now closed as insolvent, whether in the hands of receivers, the State Examiner's office, or other trustees or agents of the state, together with a concise statement, showing the time of insolvency, the name of the Receiver in charge, and such other information as the State Examiner believes will be of importance to the Attorney General.

Section 3. Immediately upon receiving such certificate the Attorney General shall institute a proceeding in the Supreme Court entitled in the name of the State of North Dakota, for itself, and on behalf of all creditors of such banks, as plaintiffs, against all of said insolvent banks as defendants, for the purpose of declaring them insolvent and winding up their affairs as insolvent banking associations. Such proceedings shall be brought by the filing in the office of the Clerk of the

Supreme Court of a complaint reciting briefly the facts as to the insolvency of each of such banks, and the name of the receiver or other officer in charge.

Upon the filing of such complaint the Attorney General shall issue a summons in the usual form of summons issued in actions in the district court of the state, and containing an additional statement to the effect that a Petition charging the bank in question with being insolvent is on file in the office of the Clerk of the Supreme Court, and that unless answer is made thereto within fifteen days from such service such complaint will be taken as confessed. Such summons, however, as prepared for service on individual banks need only name as a defendant the particular bank upon which service thereof is to be made, and such service may be made upon any officer of such bank.

Service of such Summons may be made in the same manner as the service of summons in ordinary civil actions is made, and the sheriff of the county in which the bank to be served is located shall upon request of the Attorney General immediately make service, or cause service thereof to be made, as in ordinary actions, but he shall not be entitled to collect any fees or expenses for making such service, and he shall make return thereof when served to the Attorney General.

Section 4. Upon the service of the summons as aforesaid the defendant bank shall have fifteen days within which to serve and file an answer denying insolvency, or any other material fact stated in the petition and unless within such fifteen days such answer is served and filed the insolvency of such defendant shall be deemed confessed.

Section 5. Upon the taking effect of this Act the Supreme Court shall appoint a Court Commissioner who shall have all the qualifications prescribed by law for a Judge of the Supreme Court to whom it may refer any matters committed to the jurisdiction of the court by this act, who shall act for and on behalf of the Supreme Court in hearing evidence, finding facts and making orders in any matter arising and in connection with the action or actions instituted in such court under the provisions of this Act.

Such commissioner may sit for hearing and determination of any question of law or fact that may arise in such action or actions at any place within the state, and any such hearing may be brought on upon reasonable notice given by the commissioner to the party in interest of

the time and place of such hearing, and in the exercise of the jurisdiction conferred upon him, said commissioner may permit matters to be brought before him either upon ordinary notice served upon the parties or by order to show cause, according to the practice of the district courts.

Any decision of the commissioner may be reviewed by the Supreme Court on the motion of any party aggrieved at such time and under such rules as the court may prescribe, and unless objected to by motion to review as herein provided, the court may deem the decision of the commissioner correct and without notice or application affirm the same.

Any party desiring to have a review of the decision of the commissioner by the Supreme Court must within three days after the making of the same, if he is present personally or by counsel, or within three days after written notice thereof, if not present, file with the commissioner a brief written statement of the grounds of his objection and containing the post office address of the party or his attorney upon which notice of hearing shall be served. Such statement shall be filed by the commissioner with the Clerk of the Supreme Court and notice of hearing of such motion for review shall be given to the complaining party by letter addressed to him, or his attorney at the place named in such statement. The time of giving notice of such hearing to be fixed by rule or order of the Supreme Court.

Section 6. Such commissioner shall be paid out of the general funds of the state the same salary as is paid to Justices of the Supreme Court and may employ such clerical assistance as shall be allowed by the court, and shall be reimbursed by the state for all his actual expenses incurred in connection with the performance of his duties to be passed upon by the State Auditing Board as other claims against the State. Such commissioner shall take the constitutional oath to perform his duties according to the Constitution of the United States and the State of North Dakota.

Section 7. The Supreme Court shall make rules and regulations from time to time governing the reference of matters to the commissioner and the exercise of his jurisdiction and powers and the manner and method of reviewing his decisions.

Section 8. Upon the filing of the complaint aforesaid the Court

shall appoint a receiver, or two joint receivers, of all said insolvent banks, which Receiver shall have all the powers and authorities ordinarily possessed and exercised by Receivers of insolvent corporations or prescribed by statute and the Court shall have all the power and authority with regard to the administration and closing of the affairs of such banks as are ordinarily possessed and exercised by courts of equity over the affairs of insolvent corporations. If upon a hearing on an issue raised by answer to the complaint, it shall be established that any bank proceeded against is not insolvent, then the Receiver shall be deemed to have been a temporary receiver, and shall account and be discharged accordingly as to such bank, in all other respects the Receiver shall be deemed to be a permanent receiver.

The receiver so appointed by the court shall supersede and supplant any receiver theretofore appointed by the banking department, or any other court, or any examiner or officer of the banking department that may be in charge of any such banks, but until a receiver appointed under this Act shall take possession of any such bank the receiver, or other officer already in charge, shall continue and it shall be his duty to protect, conserve and administer its affairs to the best of his ability, and he shall remain liable under his bond for all his acts committed prior to being finally relieved of his trust.

Section 9. If during the life of this Act any other banking association shall be deemed insolvent by the authorities vested by law with the power to institute insolvency proceedings against the banks, and such authorities desire to institute such proceedings, they shall make report thereof to the Attorney General, with the necessary facts as to insolvency, and he shall file a complaint such as hereinbefore provided for, as to such other association or associations, as to which it is desired to institute proceedings, joining as many as is desirable in one proceeding; and the same proceedings shall be had thereon as is provided with reference to associations already insolvent, and the court shall thereupon in like manner appoint the same receiver, or receivers, for such additional association, or associations, and the original proceeding provided for herein, and all subsequent proceedings that may be taken as in this section provided shall be deemed to be merged and amalgamated into one proceeding, but the affairs of each association shall be kept separate.

Section 10. The receiver appointed hereunder shall from time to time apply to the Commissioner for guidance and instructions and for the purpose of obtaining orders and directions with reference to the administration of the affairs or the disposition of the property of any of the banks under his control, as receiver, in the same way and as far as may be practicable under the same course of procedure that receivers appointed by district courts apply to such district courts, and the receiver or any other parties aggrieved by any determination of the commissioner may apply to the court for review thereof, as hereinbefore provided for.

Section 11. At any time when the affairs of any bank under the receivership aforesaid are ready to be closed, the court shall fix the amount of the expense of the receivership properly chargeable to such bank.

Section 12. So far as practicable, except herein otherwise provided, and except as may be otherwise provided by the court, the ordinary rules of procedure applicable to like actions in the district court shall govern the proceedings herein provided for; but the court may from time to time prescribe such rules of procedure as it shall from time to time find best adapted to the furtherance of the general purpose of expeditiously and economically winding up the affairs of insolvent banks.

Section 13. The commissioner appointed hereunder shall have power and authority to issue subpoenas for witnesses any place within the State, and to administer oaths and to punish for contempt, to the same extent as a judge of the district court, subject to a review of his decision by the Supreme Court, as in case of other decisions. At any time when district court is not in session in any county, in which the commissioner is holding a hearing, he shall have a right to take and use the court room of the district court, and he may call upon the clerk of such district court to act as his clerk, in issuing subpoenas, and may call upon the sheriff of the county to act as his court officer, and such officer shall perform such services without compensation.

Section 14. The commissioner, shall, as far as practicable, hold his hearings in the county in which the bank interested is located, and as far as practicable and with fair regard to the convenience and interest of all parties, at the most accessible point within the county.

Section 15. In all hearings before the commissioner the parties procuring the attendance of witnesses shall be liable for their witness fees and mileage, as is allowed in district court, and the commissioner may make such order with reference to the payment of costs by the different parties as shall be just.

Section 16. The Supreme Court may from time to time as occasion shall require enter interlocutory or final judgments affecting the rights of particular parties to the proceedings without affecting the rights of any other party, and any judgment so entered in the Supreme Court may be at the request of any interested party transcripted to the district court of any county in the state where it shall be docketed by the clerk of court, and shall from the time of docketing be taken and considered as a judgment of such district court in all things the same as though originally entered, and it may be enforced as a judgment in such court.

Section 17. There is hereby appropriated out of the general funds of the State the sum of $10,000.00 per year, or so much thereof as may be necessary to pay the salary of the Court Commissioner and the expenses incident to the performance of his duties hereunder.

Section 18. In case the Supreme Court shall be of the opinion that its original jurisdiction does not extend to the controversy or controversies referred to in this act, or if for any other reason the Supreme Court shall refrain from exercising its original jurisdiction with respect thereto, the proceeding shall not be dismissed, but all papers and files therein shall be transmitted to the clerk of the district court of Burleigh County, and that court shall be and is thereupon vested with full jurisdiction of such proceeding, and thereupon the Supreme Court, in the exercise of its supervisory jurisdiction shall designate some district judge to hear and try said controversy or controversies, and the judge so designated shall give precedence to such controversy or controversies over all other work and in the disposition thereof he shall be governed by the provisions of this act, and endeavor in every way to carry the same into effect. The district judge so designated shall perform all of the duties which the act requires to be performed by the court commissioner, and in such case no court commissioner shall be appointed. In such case the acts of the district court shall be subject to review by the Supreme Court in the same manner herein

provided for review by the Supreme Court of the acts of the court commissioner. Provided that all acts of such district court performed under the provisions of this act, including the appointment of a receiver, shall be subject to the supervisory control of the Supreme Court. In case of the designation of a district judge as herein provided for, all his necessary, traveling expenses incurred in carrying out the provisions of this act shall be paid out of the general fund of the state upon vouchers duly presented, as in other cases of the expenses of district judges. In case of the designation of a district judge as in this section provided, all further insolvency proceedings, in this act hereinbefore provided to be instituted in the Supreme Court, shall be instituted in the district court of Burleigh county, and conducted in like manner.

In case of the designation of a district judge as in this section provided for, the rules of procedure prescribed by the act for the court commissioner shall govern the procedure before such district judge, and the Supreme Court shall likewise make necessary rules governing the conduct of such proceeding or proceedings.

Section 19. This Act shall expire and become inoperative for any purpose on the first day of July, 1926."

When chapter 137, Laws 1923 became operative, the Attorney General instituted an action (in manner and form as prescribed by § 3 of the Act) against a number of banking corporations, including the Mohall State Bank. Upon the matter being presented to this court, it took action in accordance with § 18 of the act, and caused all papers and files in the matter to be transmitted to the clerk of the district court of Burleigh County; and it designated the Hon. Chas. M. Cooley, one of the judges of the First Judicial District in this state to hear and determine said controversies. The matter in controversy here was heard before, and determined by, Judge Cooley.

Appellant asserts that chapter 137, Laws 1923, contravenes §§ 13, 20, 86, 96, 103, 104 and subdivisions 5 and 8 of § 69 of the North Dakota Constitution and the 14th Amendment of the Federal Constitution for the following reasons:

1. That an action to liquidate an insolvent bank is not within the original jurisdiction of the Supreme Court.

52 N. D.—16.

2. The Supreme Court having no original jurisdiction of such action, it had no power to transmit the case to the district court, and such transmissal was a nullity, and did not vest the district court with jurisdiction to hear and determine the cause.

3. That the provision in the statute authorizing the Supreme Court (In case the Supreme Court refrains from assuming original jurisdiction) to designate a district judge to hear and determine the action or actions for liquidation of insolvent banking corporations is null and void; and that the designation of such judge made by the Supreme Court under the provisions of chapter 137, supra, is void and of no effect.

Before entering into a discussion of the questions raised by the appellant, we deem it proper and desirable to consider some of the fundamental rules which must guide us in determining them. We are asked to declare a legislative enactment void. The judicial power thus invoked is one of the highest which the people by the Constitution have conferred upon this court, and imposes upon the judges responsibility and duty as grave and solemn as the power is high. The duty imposed is the very source of the power granted. For in establishing government, both in state and nation, the people adopted written constitutions, which it was agreed should constitute the supreme law. In these constitutions the people created three great departments of government, viz.: the legislative, judicial and executive. And it was provided that the legislative department should make the laws; the judicial department interpret and apply them; and the executive department enforce them. These three departments are co-ordinate, of equal dignity; "each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other." Cooley, Const. Lim. 7th ed. p. 227. The judicial department is not vested with legislative power; and it has no authority either to legislate in the first instance, or to do so indirectly by revising, altering or repealing a legislative enactment. The judicial department, however, is vested with the judicial power, and all of that power. It is the province of the courts, and the sworn duty of the judges thereof, to faithfully interpret and apply the law in every case coming before them for determination. "And those who apply the rule to particular cases

must of necessity expound and interpret that rule. If two laws conflict with each other the courts must decide on the operation of each. So, if a law be in opposition to the Constitution; if both the law and the Constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty. If, then, the courts are to regard the Constitution, and the Constitution is superior to any ordinary act of the Legislature, the Constitution, and not such ordinary. act, must govern the case to which they both apply." Marbury v. Madison, 1 Cranch, 137, 2 L. ed. 60. The Constitution emanates from the people, and is the supreme law. It creates all the departments of government, and is the charter of their authority. This applies as well to the legislative as to the judicial department. "The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten the Constitution was written." Ibid. The legislature was created by the Constitution and vested with power to enact laws conformable to the provisions of the Constitution; but it was not given power to alter or repeal, in any particular, any of the constitutional provisions. The power to change the Constitution was expressly reserved by the people, and required to be exercised in the manner prescribed in the constitution itself. The Constitution created the judicial department to interpret and apply the laws. And as a condition precedent to the performance of any official act, each judge is required to take an official oath, whereby he, in the most solemn manner, pledges himself to support the Federal and State Constitutions and to faithfully discharge the duties of his office. N. D. Const. § 211. The first duty assumed by each judge under his oath of office is to support the Federal and State Constitutions. N. D. Const. § 211, U. S. Const. art. 6. Hence, if in any cause presented to the court, one of the parties invokes a provision of statutory law, and another party invokes a provision of the Constitution, and there is a clear repugnance between the two so that one cannot be enforced without doing violence to the other, the court must of necessity enforce the Constitution. And it is only when such situation arises that the power to declare a legislative act to be unconstitutional becomes operative, that is, the power

to declare a legislative act unconstitutional becomes available where judicial duty cannot· be performed except by exercise of the power: Hence, the power granted imposes upon the courts a responsibility and duty of corresponding magnitude. And "the courts invariably give the most careful consideration to questions involving the interpretation and application of the constitution, and approach constitutional questions with great deliberation, exercising their power in this respect with the greatest possible caution, and even reluctance; and they should never declare a statute void, unless its invalidity is, in their judgment, beyond reasonable doubt." 6 R. C. L. pp. 74, 75. In other words, the question for the court to determine is not merely whether the statute is in conflict with the constitution; but whether it is within the limits of reason for the legislature to give to the constitution the construction it has given to it in enacting the statute. 1 Willoughby, Const. Law, p. 21.

In State ex rel. Linde v. Taylor, 33 N. D. 76, 85, 86, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583, this court said:

"Every reasonable presumption is in favor of the constitutionality of a statute enacted by the legislature. 8 Cyc. 801; O'Laughlin v. Carlson, 30 N. D. 213, 152 N. W. 675. This presumption is conclusive, unless it is clearly shown that the enactment is prohibited by the Constitution of the State or of the United States. Cooley, Const. Lim. 7th ed. 242; 8 Cyc. 801. The only test of the validity of an act regularly passed by a state legislature is whether it violates any of the express or implied restrictions of the State or Federal Constitutions. 8 Cyc. 776; Cooley, Const. Lim. 7th ed. pp. 232–241; Re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; Ratcliff v. Wichita Union Stock-Yards Co. 74 Kan. 1, 6 L.R.A.(N.S.) 834, 118 Am. St. Rep. 298, 86 Pac. 1103, 10 Ann. Cas. 1016; Ex parte Boyce, 27 Nev. 299, 65 L.R.A. 47, 75 Pac. 1, 1 Ann. Cas. 66. And he who alleges a statute to be unconstitutional must be able to point to the particular constitutional provision violated. Missouri River Power Co. v. Steele, 32 Mont. 433, 80 Pac. 1093; State v. Wilson, 124 Iowa, 264, 99 N. W. 1060; 8 Cyc. 800."

These rules are peculiarly applicable in this state, where it is provided by the Constitution "that in no case shall any legislative enactment or law of the State of North Dakota be declared unconstitutional"

unless four of the five judges of the supreme court shall so decide. N. D. Const. art. 25, Amendments.

In considering whether the legislature transcended its constitutional powers in the enactment of a statute it is, also, well to bear in mind the fundamental difference between the Constitution of the United Státes and the Constitution of the State of North Dakota, as regards the legislative powers which may be exercised under them.

Cooley (Cooley, Const. Lim. 7th ed. 242) said:

"We look in the Constitution of the United States for grants of legislative power, but in the Constitution of the State to ascertain if any limitations have been imposed upon the complete power with which the legislative department of the state was vested in its creation. Congress can pass no laws but such as the Constitution authorizes, either expressly or by clear implication; while the state legislature has jurisdiction of all subjects on which its legislation is not prohibited. The lawmaking power of the state, it is said in one case, recognizes no restraints and is bound by none except such as are imposed by the Constitution. That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations the power to make laws would be absolute. These limitations are created and imposed by express words or arise by necessary implication."

Under the Constitution of this state "all governmental power is vested in the legislature except such as is granted to the other departments of the government, or expressly withheld from the legislature by constitutional restrictions." State ex rel. Standish v. Boucher, 3 N. D. 389, 395, 21 L.R.A. 539, 56 N. W. 144; O'Laughlin v. Carlson, 30 N. D. 213, 152 N. W. 675; State ex rel. Linde v. Taylor, supra.

Bearing these fundamental principles in mind we approach the questions presented for determination in this case.

The legislative enactment whose validity is challenged here relates to the subject of banking,—or rather the liquidation of insolvent banks. It is well settled that the legislature is vested with constitutional authority to regulate the business of banking; and may even prohibit the business from being carried on at all, except under such conditions as it may prescribe. State ex rel. Goodsill v. Woodmansee, 1 N. D. 246,

11 L.R.A. 420, 46 N. W. 970; 7 C. J. p. 480. And the legislature has power, by general law, to alter or even withdraw franchises granted to banking corporations. N. D. Const. § 131; 12 C. J. p. 1024. Hence, the legislature clearly had power to say when and under what conditions banking corporations should be deemed insolvent and subject to liquidation; and also had power to prescribe any mode or manner for the liquidation of such insolvent banking corporations, not expressly forbidden by the constitution.

But, says the appellant, the legislature, by the act in question here, purported to confer upon the Supreme Court original jurisdiction of all actions for the liquidation of insolvent banking corporations; and such actions are not within the original jurisdiction of the supreme court as that jurisdiction is granted and defined by the Constitution. A sufficient answer to the contention thus advanced is that the provisions of said chapter 137, which authorize and request the Supreme Court to assume original jurisdiction of actions for the liquidation of insolvent banking corporations, have not been put into force. The Supreme Court has not assumed jurisdiction of such actions. The jurisdiction of such actions has been assumed by the district court of Burleigh County in conformity with § 18 of said chapter 137. The instant case is pending in that court, and the order before us was entered by that court, after full hearing had therein; and such order is brought before this court for review under the provisions of said chapter 137, authorizing the review of orders of the district court in such cases. In these circumstances appellant is not concerned with the validity of the provisions of chapter 137, authorizing the Supreme Court to assume original jurisdiction (Avent v. United States, 266 U. S. 127, 69 L. ed. 202, 45 Sup. Ct. Rep. 34), and cannot be heard to question their validity. "A litigant can be heard to question the validity of a statute only when, and in so far as, it is applied to his disadvantage." State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292; Rindge Co. v. Los Angeles County, 262 U. S. 700, 67 L. ed. 1186, 43 Sup. Ct. Rep. 689; Avent v. United States, supra.

The Act quite emphatically discloses the objective the lawmakers had in mind. The question of the venue of actions for the liquidation of insolvent banking corporations was merely an incidental one,—a means to an end. The primary object the lawmakers had in mind was

to provide an economical and orderly procedure for the liquidation of insolvent banking corporations, through judicial proceedings. It was desired to have all such proceedings brought in one court, and to have the receiver, or two joint receivers, appointed in such action placed in charge of the affairs of all such insolvent banking corporations. It is true, the lawmakers decided, and declared, that in view of the emergency they desired the supreme court to take original jurisdiction of such actions but they also declared in the most unmistakable language that this desire was not the primary, or even a controlling cause, for they said: "In case the supreme court shall be of the opinion that its original jurisdiction does not extend to the controversy or controversies referred to in this act, or if for any other reason the supreme court shall refrain from exercising its original jurisdiction with respect thereto, the proceedings shall not be dismissed, but all papers and files therein shall be transmitted to the clerk of the district court of Burleigh County and that court shall be and is thereupon vested with full jurisdiction of such proceeding." (§ 18.)

This statement is too plain to be misunderstood. It indicates that the lawmakers recognized that it was beyond their powers to either restrict or enlarge the original jurisdiction of this court; and that even in cases which fall within such grant of jurisdiction the court alone is vested with power to determine whether the jurisdiction ought to be exercised. According to the preamble of the act the lawmakers desired to remedy certain mischiefs and defects in the mode then existing for liquidating insolvent banking corporations. They determined that the then existing mode was productive of injustice; and they decided that the best way to correct the mischief in the then existing laws was to have all actions for the liquidation of such insolvent banking corporations brought in one court, and to have the affairs of all such banking corporations placed in the hands of one receiver, or two joint receivers, appointed by such court. The lawmakers desired to accomplish this end, and to use whatever means they might constitutionally adopt for that purpose. And they said, in effect, that if the original jurisdiction of the supreme court extended to such actions, and the court, in the exercise of its constitutional powers determined that it would assume jurisdiction, that then they believed that the desired end could be best accomplished by having all actions for liquidation of insolvent bank-

ing corporations brought in the supreme court. But the lawmakers were not willing that the object of their legislation should fail because this form might become unavailing, either because the original jurisdiction of the supreme court did not extend to such causes; or because that court, in exercise of its unquestioned power, might refrain from exercising such jurisdiction; and so the lawmakers said further that if these provisions of the act became inoperative by reason of the supreme court's refraining from assuming such original jurisdiction that then the action or actions in which the supreme court had refrained from exercising jurisdiction should not be dismissed, but all files therein should be transmitted to the district court of Burleigh County and such court become vested with jurisdiction thereof. The practical effect of this alternative provision is to provide that all actions for the liquidation of insolvent banking corporations shall be brought in the district court of Burleigh County; for, by the plain language of the statute, when the supreme court, for any reason refrained from taking original jurisdiction of such actions, this alternative provision became effective and furnished the sole mode of procedure in cases for the liquidation of insolvent banking corporations. The alternative provision of the statute has become operative and that alone is involved in this controversy, and the proceedings before us were had and the order entered by virtue of that provision.

We are not concerned with the wisdom or expediency of the legislative enactment or with the form in which the legislative will was expressed further than to ascertain the intention of the lawmakers and to determine whether such intention, as expressed in the act, contravenes any constitutional inhibitions. In other words, we are concerned alone with the question of legislative power; the limitations upon that power are those fixed by the constitution. State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. For as was well said by the great Chief Justice: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited but consistent with the letter and spirit of the constitution, are constitutional." M'Culloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579.

Here there is no difficulty in ascertaining the legislative intention.

The legislature has indicated in the most unmistakable language what object it intended to accomplish. It has, also, indicated with equal clearness that the means chosen to accomplish that object were not the inducing causes for the enactment. While the legislature authorized the supreme court to assume original jurisdiction of actions for the liquidation of insolvent banking corporations, it stated emphatically that if the supreme court for any reason refused to assume such jurisdiction, then the provisions relating to such original jurisdiction might, in effect, be stricken from the act, and the remaining provisions of the law given effect. And wholly aside from the provisions relating to the original jurisdiction of this court there remains a complete scheme of legislation, by means of which the legislative object may be accomplished. And in our opinion none of the constitutional provisions invoked by the appellant is violated by the procedure so prescribed, and we are aware of no other constitutional provisions violated thereby.

It is well settled that, in absence of express constitutional provisions to the contrary, the legislature may regulate and control the venue in civil actions, subject alone to the limitation that reasonable opportunity must be given for the prosecution and defense thereof. 12 C. J. p. 1226.

Ruling Case Law (27 R. C. L. pp. 779, 780) says: "As a general proposition the venue of civil actions is a matter purely and absolutely within the legislative discretion, no rights in this regard being secured by the conventional constitutional provision for the protection of the individual. Whether this discretion is wisely exercised so as to bring fair results it is not important to inquire. Once the power to legislate on the subject and determine the venue of actions exist, the wisdom of its exercise is not a judicial question."

That the legislature is vested with power to fix the venue of civil actions and proceedings has been recognized during the entire history of the state. Rev. Codes, 1899, §§ 5241–5245; Comp. Laws, 1913, §§ 7415–7419. In fact, the principal statutory provisions fixing the place of trial of civil actions were enacted by the Territorial legislature (Code Civ. Proc. p. 1877, §§ 92–95), were continued in force by the schedule adopted by the constitutional convention (Schedule, § 2), and have since been enacted the law of this state. (Comp. Laws, 1913, §§ 7415–7419).

The only constitutional provisions pointed out by appellant as inhibiting the legislature from fixing the venue of all actions to liquidate insolvent banking corporations in the district court of Burleigh county are subdivisions 5 and 8 of § 69 of the Constitution of this state.

The provisions read as follows:

"Section 69. The legislative assembly shall not pass local or special laws in any of the following enumerated cases. That is to say, . . .:

5. Regulating the practice of courts of justice. . . .

8. Providing for changes of venue in civil or criminal cases."

This provision does not inhibit the legislature from making reasonable classifications for the purpose of legislation.

Within the purview of § 69 of the Constitution, a "special law" is one which relates only to particular persons or things of a class, as distinguished from a "general law," which applies to all things or persons of a class. 4 Words & Phrases, 2d series, p. 635 et seq; 36 Cyc. 986; 25 R. C. L. p. 813; and a "local law" is one which applies to a specific locality or spot, as distinguished from a law which operates generally throughout the entire state. Gray v. Taylor, 227 U. S. 51, 57 L. ed. 413, 33 Sup. Ct. Rep. 199; 25 R. C. L. p. 814. 3 Words & Phrases, 2d series, p. 168. The statutory provision under consideration here is neither special nor local; it is general. It operates equally upon all persons and things within the scope of the statute. It operates alike on all persons and property similarly situated. All insolvent banking corporations and all persons in any manner affected are treated alike under like circumstances and conditions. The effect is precisely the same upon all corporations and persons who stand in the same relation to the law. In other words, it operates alike in all cases where the facts are substantially the same. It operates throughout the entire state. Every insolvent banking corporation within the state is subject to the act. The provision now under consideration applies to every action brought by the state through its chief law officer to liquidate an insolvent banking corporation, and fixes the venue of such action in the district court of Burleigh County,—(the county in which the state capitol is situated). And ample provision is made for notice to the parties affected by the controversy, and full opportunity to be heard is afforded them.

In fixing the venue, the legislature was concerned with, and pre-

scribed the procedure for, the liquidation of corporations that had been chartered under the laws of this state to carry on the business of banking, and had forfeited the right to continue in the banking business. The actions in question are actions brought by the state through its chief law officer to enforce statutes regulating banking corporations organized under the laws of this state. The primary purpose of the legislation involved the state police power, and there was wide play for legislative discretion. The legislature was not inhibited by any express provisions of the constitution from fixing the venue as it did. And, considering the nature and object of the actions, we do not believe it can be said that the provision as to venue is so unreasonable as to amount to a denial of due process, or of the equal protection of the laws. In other words, we are of the opinion, that where the legislature (as in this act), affords the parties affected adequate notice and full opportunity to be heard, it may constitutionally provide that all actions by the state for the liquidation of banking corporations shall be brought in the district court of Burleigh County.

Questions quite analogous to the ones raised here were considered by the Supreme Court of California and the United States Supreme Court in State v. Security Sav. Bank, 186 Cal. 419, 199 Pac. 791, 263 U. S. 282, 68 L. ed. 301, 31 A.L.R. 391, 44 Sup. Ct. Rep. 108. That case involved an act of the California legislature, which provided that when money is on deposit in a bank in that state and the depositor does not, for a period of more than twenty years, deposit any more money in the account, nor draw out any part thereof, nor claim the same, and neither the depositor nor any claimant has filed with the bank any notice of his present residence, such deposit, shall escheat to the state. (186 Cal. 419, 199 Pac. 792). The Statute further provided that on being informed of such deposits the Attorney General should bring suit in the name of the state in the superior court of Sacramento County; that all or any number of banks or depositors might be included in one action; that personal service of process in such action must be made upon the bank; that upon depositors service be made by publication in Sacramento County. (186 Cal. 419, 199 Pac. 792, id. 263 U. S. 282, 68 L. ed. 301, 31 A.L.R. 391, 44 Sup. Ct. Rep. 108). The constitutionality of the act was challenged on the ground that it deprived the banks of property without due process, "because,

owing to defects in the prescribed procedure, depositors will not be bound by the judgment; and, hence, that payment to the state will not discharge the bank from its liability to them." (263 U. S. 286, 68 L. ed. 301, 31 A.L.R. 391, 44 Sup. Ct. Rep. 110). But both the state and federal court held that the procedure prescribed by the legislature had the essential elements of due process. In our opinion, the procedural provisions in the act under consideration here are less susceptible to attack on the ground that they do not afford due process, than were the provisions of the California Act.

But it is said that the provision fixing the venue of all actions for the liquidation of insolvent banking corporations in the district court of Burleigh county is violative of § 103 of the Constitution, which provides that "the district court shall have original jurisdiction . . . over all causes both at law and in equity." In our opinion this contention is so wholly devoid of merit that a mere statement thereof answers it. The argument followed to its logical conclusion would inhibit the legislature from passing any laws relating to the venue of actions in district courts; for it necessarily follows that when a law provides that the existence of certain facts—(such as the residence of the defendant or the location of the subject matter)—shall fix the venue of an action in a certain county, that the district courts of the other counties are deprived of the right to lawfully try such action over the seasonable objection of the defendant. This, however, does not infringe upon the constitutional powers of the district courts in the other counties of the state; nor does it enlarge the powers of the district court in which the venue is fixed. It is merely a rule of practice enacted by the law-making assembly to enable the district courts to exercise their constitutional powers in an efficient and orderly manner. That is true of the act in question here. It merely fixes the venue of actions for the liquidation of insolvent banking corporations in the district court of Burleigh County. It does not purport to confer upon that court, or require it to exercise, any other or greater powers than those vested in a district court by § 103 of the Constitution. Neither does it purport to confer upon the judge who is designated to preside in such court, at the trial of such actions, any other or greater powers than these conferred upon him by virtue of his office as a district judge. He merely exercises the functions of a judge of the district court over

which he presides and that court exercises the powers conferred upon it by the constitution of this state and no others.

It is suggested, however, that the act in question here fixes the venue not only of actions for the liquidation of insolvent banking corporations; but also the venue of all actions by or against the receiver or joint receivers to be appointed under the provisions of the act; and it is said that this latter requirement is so unreasonable as to be violative of the constitutional guarantee of due process. Leaving wholly on one side the question of legislative power thus challenged,—and on this question we express no opinion,—it is; we think, too clear for controversy that the legislature in fixing the venue of actions intended to deal, and dealt, only with actions for the liquidation of insolvent banking corporations. The provisions in the act relating to venue has reference to such actions, and such actions only, and there was no intention to make any change in the existing laws as regards the venue of suits by or against a receiver of an insolvent banking corporation. See 2 Tardy's Smith, Receivers, 2d ed. p. 2005.

Appellant further contends that if the supreme court did not have original jurisdiction of an action to liquidate an insolvent banking corporation, then it had no power whatsoever in such action; and had no power to transmit the files and papers in such cause to the district court of Burleigh County, and such transmissal was a nullity. In support of this contention appellant calls attention to the fact that heretofore in cases where the original jurisdiction of the supreme court has been invoked and the court has refrained from exercising such jurisdiction, the court has taken no further action, and has never transmitted the papers in the cause to a district court for action there. In our opinion appellant's contention is incorrect, and the argument advanced in support thereof unsound. The contention is predicated upon the premise that the transmissal of the papers was an assumption of jurisdiction over the cause. Such transmissal is not an assumption of jurisdiction. Jurisdiction is the power to hear and determine a controversy. Erickson v. United States, 264 U. S. 246, 68 L. ed. 661, 44 Sup. Ct. Rep. 310; Christenson v. Grandy, 46 N. D. 418, 180 N. W. 18; 2 Words & Phrases, 2d series, p. 1277. The mere transfer of the papers and files in an action to another court to enable the latter court to hear and determine the cause, certainly does not con-

stitute any exercise or assumption of jurisdiction over the cause by the court which makes the transfer. The transfer of a cause to another court is one of declination rather than one of assumption of jurisdiction by the court making the transfer.

Appellant's argument as regards the practice of this court in former cases ignores the fact that as regards such cases there was no statutory provision requiring or permitting the papers to be so transmitted. In this case there is a specific statutory provision directing a transmissal of the papers to the district court of Burleigh county in case the supreme court refuses to take jurisdiction of the cause. While the legislature may neither restrict nor enlarge the original jurisdiction of this court, or control the exercise thereof, it has the unquestioned power to enact reasonable statutory rules for the institution of civil actions in the district courts of this state; and we are aware of no constitutional provision which inhibits the legislature from providing that where a party institutes an action in the supreme court and that court refrains from exercising its original jurisdiction in the cause, that the papers in the cause shall be transmitted to the district court properly vested with jurisdiction of the controversy. In fact, there is a direct precedent for such statutory enactment under a constitution almost identical with our own. In Wisconsin the constitution vests the supreme court with the same grants of jurisdiction as those which the constitution of this state vests in this court; and the grant of original jurisdiction in the Wisconsin constitution is substantially the same as that contained in our own. State ex rel. Goodwin v. Nelson County, 1 N. D. 88, 102, 8 L.R.A. 283, 26 Am. St. Rep. 609, 45 N. W. 33. In 1915 the Wisconsin legislature enacted a statute which, among other things, provided: "In all cases in every court where objection to the jurisdiction of that court is sustained by order, judgment or in any other way, the cause shall be certified to some court having jurisdiction, provided it appear that the error arose from a bona fide mistake and not from design." Laws 1915, chap. 219, Stat. 1915, § 2836a. In State ex rel. Johnson v. La Crosse & Trempealeau Counties, 165 Wis. 164, 161 N. W. 356, the Supreme Court of Wisconsin held that this statute was applicable to the supreme court, and that an original "action of Mandamus, over which the supreme court refuses to take jurisdiction, will be certified by it to the proper circuit

court for trial as if it originally commenced therein." Syllabus, ¶ 3.

A statute somewhat similar to the one in Wisconsin was latter enacted by Congress to preclude the dismissal of appeals and proceedings in error in the Federal Courts, when the appeal or writ of error is taken to or issued out of an appellate court which does not have jurisdiction to hear and determine it. Judicial Code, § 238a, Act of Sept. 14, 1922, chap. 305, 42 Stat. at L. 837. (Comp. Stat. § 1215a, Fed. Stat. Anno. Supp, 1922 p. 231). The Act of Congress reads:

"If an appeal or writ of error has been or shall be taken to, or issued out of, any circuit court of appeals in a case wherein such appeal or writ of error should have been taken to or issued out of the Supreme Court; or if an appeal or writ of error has been or shall be taken to, or issued out of, the Supreme Court in a case wherein such appeal or writ of error should have been taken to, or issued out of, a circuit court of appeals, such appeal or writ of errors shall not for such reason be dismissed, but shall be transferred to the proper court, which shall thereupon be possessed of the same and shall proceed to the determination thereof, with the same force and effect as if such appeal or writ of error had been duly taken to, or issued out of, the court to which it is so transferred."

Prior to the enactment of this statute it was fatal to an appeal or proceeding in error if the same was taken to, or issued out of, the court which was not vested with jurisdiction to hear and determine it; and the court whose jurisdiction was thus invoked was required to dismiss the appeal or proceeding in error. J. Homer Fritch v. United States, 248 U. S. 458, 63 L. ed. 359, 39 Sup. Ct. Rep. 158. But since the enactment of the statute this is not so; now, if an appeal or a writ of error is taken to, or issued out of, a court which is not vested with jurisdiction to hear it, the appeal or proceeding is not dismissed; but is transferred to the proper court, which then proceeds to hear and determine the cause in the same manner as though the appeal or the proceeding in error had been properly taken to or issued out of the court to which it was so transferred. Campbell v. United States, 266 U. S. 368, 69 L. ed. 328, 45 Sup. Ct. Rep. 115; Avent v. United States, 266 U. S. 127, 69 L. ed. 202, 45 Sup. Ct. Rep. 34.

Again, under the constitution of this state a justice of peace has no jurisdiction of any case wherein "the boundaries of or title to real es-

tate" comes in question.  N. D. Const. § 112.   But while a justice of
the peace is without jurisdiction of such cause,—that is, has no power
to hear and determine the same,—he has authority to certify and trans-
mit the same to the district court of the county, and that court there-
upon becomes vested with jurisdiction to hear and determine it.   Comp.
Laws, 1913, § 9055; Johnson v. Erickson, 14 N. D. 414, 105 N. W.
1104.

It is next contended that the provision in the statute, authorizing
the supreme court (in case it refrains from assuming original juris-
diction) to designate a district judge to hear and determine the action
or actions for liquidation of insolvent banking corporations is null and
void; and, hence, that the designation of such judge made by the
supreme court under the statute is void and of no effect.

The constitution vests this court with three independent and dis-
tinct grants of jurisdiction:—(1) Appellate Jurisdiction (Const. §
86); (2) "General superintending control over all inferior courts,
under such regulations and limitations as may be prescribed by law"
(Const. § 86); and (3) Original jurisdiction to issue certain pre-
rogative writs and hear and determine the controversies thus presented
(Const. § 87).

The second grant of constitutional power is conferred in the follow-
ing language: "The Supreme Court  .  .  .  shall have a general
superintending control over all inferior courts under such regulations
and limitations as may be prescribed by law."   Const. § 86.   The
Constitution also provides: "Judges of the district courts may hold
court in other districts than their own under such regulations as shall
be prescribed by law."   Const. § 116.

In the Act under consideration here the legislature provided that
if for any reason the supreme court refrains from exercising its orig-
inal jurisdiction, "the proceeding shall not be dismissed, but all papers
and files therein shall be transmitted to the clerk of the district
court of Burliegh county, and that court shall be and is thereupon
vested with full jurisdiction of such proceeding, and thereupon the
Supreme Court, in the exercise of its supervisory jurisdiction shall
designate some district judge to hear and determine said controversy
or controversies."   Chap. 137, § 18.

The lawmakers by the statutory provision in question here sought

to exercise the powers granted to them under the two sections of the Constitution last cited; they prescribed by law a regulation for the exercise by this court of its power of superintending control over an inferior court; and, they also, prescribed a regulation under which a district judge might be required to hold court in a district other than his own. Did the lawmakers in adopting these regulations so clearly transcend the power vested in them by the constitution that this court can and must say that they exercised powers withheld from them by the Constitution? We think not.

The nature and extent of the power vested in this court to exercise "a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law" were so fully considered by this court in State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381; and again in State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745, that little can be added, in a general way, to what was said there. According to Webster's New International Dictionary control is "power or authority to control." And to superintend is to "have or exercise the charge and oversight of; to oversee with power of direction; to supervise." The powers conferred and the duties imposed upon this court by the constitution are as broad as the words of the grant of power imply. That is, it is the power, and corresponding duty, to exercise, in the interests of justice, "a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law." Here we have not only an express grant of power to this court to exercise "a general superintending control" over the district, as well as all other inferior, courts; but also a grant of power to the legislature to prescribe regulations for the exercise of such power. Both the legislature and this court have heretofore recognized their respective functions under this constitutional provision. This court has exercised the power in the interest of justice where the exigencies of the cause required it to do so, where no regulations had been enacted by the legislature for the exercise of the power. Thus this court has repeatedly reviewed orders of the district court relating to the change of place of trial in causes where no provision was made by law for review of such orders by appeal. And the legislature, by chapter 167, Laws 1919, directed this court to fix the terms of the district courts in the several judicial dis-

tricts in this state; and by chapter 1, Laws 1919, to designate another district judge to sit in, and try, any case wherein an affidavit of prejudice is filed against the trial judge. Both of these statutes have been in force for more than five years, and have, during this time governed proceedings covered by the acts; and the validity of these statutes has never been questioned.

As already indicated, the Wisconsin constitution confers upon the supreme court of that state the same grants of jurisdiction which the constitution of this state confers upon this court. The language in the Wisconsin Constitution relating to the grant of power now under consideration is as follows: "The Supreme Court shall have a general superintending control over all inferior courts." In considering the nature and extent of power conferred upon the supreme court by this clause the Wisconsin Supreme Court, in Atty. Gen. v. Blossom, 1 Wis. 317, said:

"This sentence contains a clear grant of power. We will not undertake to say, that without this grant the power would not be in the court. It is not necessary to discuss that question. We are endeavoring to arrive at the proper construction of the written law. It is a grant of power. It is unlimited in extent. It is undefined in character. It is unsupplied with means and instrumentalities. The Constitution leaves us wholly in the dark as to the means of exercising this clear, unequivocal grant of power. It gives, indeed, the jurisdiction, but does not pretend to intimate its instruments or agencies."

The constitutional grants of power were again considered in Atty. Gen. v. Chicago & N. W. R. Co., 35 Wis. 425. In that case, Mr. Chief Justice Ryan, speaking for the court, said: "The three grants of jurisdiction proceed on one policy; appellate jurisdiction to decide finally all ordinary litigation; *superintending jurisdiction over other courts to control the course of ordinary litigation in them;* and, outside of these, original jurisdiction of certain proceedings at law and in equity to protect the general interests and welfare of its people, which it would not do (to quote Smith, J.) to dissipate and scatter among many inferior courts."

In State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, 51 L.R.A. 33, 79 N. W. 1081, after re-affirming the principles announced in Atty. Gen. v. Blossom, supra, and Atty. Gen. v. Chicago & N. W.

R. Co., supra, as well as the specific language quoted above the court, speaking through Judge Winslow, said:

"It must be regarded as settled, therefore, that by the constitutional grant of 'a general superintending control over all inferior courts' this court was endowed with a separate and independent jurisdiction, which enables and requires it in a proper case to control the course of ordinary litigation in such courts, and was also endowed with the common-law writs applicable to that jurisdiction."

With reference to the origin of the power thus conferred, the court said:

"That the makers of the constitution used the words in question understandingly, and with a specific meaning, and not as in mere rhetorical flourish or high sounding form of words, can admit of no doubt. Only a superficial knowledge of the growth and development of the English judicial system is necessary to determine what that meaning was and is. The English court of king's bench had a superintending jurisdiction over all the inferior courts of the realm, which it freely exercised by the use of well-defined writs from very early times. The Norman idea was that the king was the fountain of all justice, and hence, when an inferior court exceeded its jurisdiction, or refused to act within its jurisdiction to the prejudice of a suitor, and no other remedy was provided, application could be made by the aggrieved party to the king's court to restrain or compel action. The king's bench was peculiarly the king's court, in which he sometimes sat himself, and was always supposed to sit when not personally present. It succeeded in this respect the very ancient aula regis when (near the close of the Norman period) that court was divided into the courts of the king's bench, common pleas, and exchequer. Being the king's court, it was natural, if not inevitable, that the king's sovereign power of causing justice to be done to his subjects in the course of litigation in inferior courts should be administered by and through that court. Blackstone says of this court (3 Comm. chap. 4, p. 42): "The jurisdiction of this court is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove the proceedings to be determined here, or prohibit their progress below. It superintends all civil corporations in the kingdom. It commands magistrates and others to do what their duty requires, in every case

where there is no other specific remedy. It protects the liberty of the subject by speedy and summary interposition. It takes cognizance both of criminal and civil cases; the former in what is called the crown side or crown office, the latter in the plea side of the court."

In an exhaustive note to State ex rel. Fourth Nat. Bank v. Johnson, in 51 L.R.A. 33, the commentator concludes: "As is so often stated in the decisions, the power of superintending control is an extraordinary power. It is hampered by no rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them."

What is said by the Wisconsin court, and by the commentator in the L.R.A. note is equally applicable here. For it will be noted that the only distinction between the grant of power considered by the Wisconsin court and the L.R.A. Commentator, and the grant of power in the constitution of this state is that as to the former the legislature had no authority to regulate its exercise, while the Constitution of this state expressly authorizes the legislature to enact laws for the regulation of such supervisory jurisdiction. And in the case at bar we are dealing with a statute where the legislature has sought to exercise the power so granted to it. And this legislative enactment comes before us clothed with the same presumptions of validity which apply to other legislative acts. And in our opinion it cannot be said that the presumption of validity which inheres in this enactment has been overcome. In other words, it has not been shown that the legislature has exceeded any constitutional restraints placed upon its law-making power. As has been noted, our constitution expressly authorizes the legislature to prescribe, by law, regulations under which a district judge may be required to hold court in a district other than his own. And it, also, empowers this court to exercise a superintending control over the district (and all other inferior) courts, under such regulations and limitations as may be prescribed by law. The judge is the principal agent through which the judicial power of the district court is made effective. All orders made, judgments given or other acts done by him in any action, special proceeding, or other matter, civil or criminal,

are deemed to be the orders, judgments and acts of the court. Comp. Laws 1913, § 7352. Without a judge there can be no judicial hearing or determination of any cause. In other words, unless there is a judge thereof, there is no district court capable of performing the primary judicial functions. Suppose there were no provisions of law in this state whereby a judge of one district might be called to sit in another district; and supposing further that in one of the districts there was no judge qualified to hear and determine certain pending litigation, would it be seriously contended that the Supreme Court might not, in exercise of its power of superintending control, designate a judge from some other judicial district to hear and determine the cause? We think not. And if the power exists at all, that is, if the Supreme court has power to designate a trial judge in a case pending in the district court in any circumstances, the legislature has authority to prescribe reasonable regulations for the exercise of such power. The legislature made such regulation in this case, and the power was exercised by the supreme court in conformity with such legislative regulation. A district judge has jurisdiction throughout the state to exercise, under the regulations and limitations prescribed by law, the powers conferred by law upon the district court or the judges thereof. Comp. Laws, 1913, § 7352; Gould v. Duluth & D. Elevator Co. 3 N. D. 96, 54 N. W. 316; State v. Heiser, 20 N. D. 357, 127 N. W. 72. The designation of the judge of one district court to sit in another district is not an appointment to office, and involves no exercise of executive appointive power. McDowell v. United States, 159 U. S. 596, 598, 40 L. ed. 271, 272, 16 Sup. Ct. Rep. 111. A district judge who is called to sit in a district other than his own, exercises powers conferred and discharges duties imposed upon him by the office to which he was elected or appointed in the first instance. N. D. Const. § 116. By being called to hold court in another district he does not acquire any new office, or change the court; but he acts ex officio as judge of the court over which he is called to preside by virtue of the powers conferred upon him as judge of the district wherein he was chosen. Hutchins v. Des Moines, 176 Iowa, 189, 201, 157 N. W. 886. See also 15 R. C. L. pp. 515, 516.

It follows from what has been said that chapter 137, Laws 1923, does

not contravene any of the constitutional provisions invoked by the appellant. It is the law of this state, and must be enforced as such.

Order affirmed.

BRONSON, Ch. J., and BIRDZELL, NUESSLE, and JOHNSON, JJ., concur.